[Civ. No. 7374.   Third Dist.   May 8, 1947.]

ASSOCIATED LUMBER & BOX COMPANY (a Corporation), Petitioner, v. THE SUPERIOR COURT OF CALAVERAS COUNTY, Respondent.

Huberty & Huberty for Petitioner.

Charles Gilmore for Respondent.

THOMPSON, Acting P. J.—By means of certiorari the petitioner seeks to vacate an order made in a suit entitled *Bert E. Howe et al.* v. *Associated Lumber & Box Co., a corporation et al.*, finding the petitioner guilty of contempt for violating an injunction restraining it from discharging water and debris into a gulch extending across plaintiffs' land, and imposing a fine of $100 as penalty therefor. After the injunction was granted, and while a motion for new trial was pending, the order of contempt was rendered. The defendant subsequently perfected an appeal from the judgment for injunctive relief. That appeal is now pending.

On this petition for certiorari it is contended that the injunction is mandatory and not prohibitory in nature and that the appeal from the judgment in the injunction suit stayed proceedings and deprived the court of jurisdiction to render the order of contempt.

This petitioner owned and operated a sawmill and log pond in Calaveras County, above Sailor's Gulch and the property of Mr. and Mrs. Bert E. Howe, for more than two years prior to the litigation which is involved in this proceeding. For the use of its mill and pond defendant purchased water from Calaveras Public Utility District, and deposited the excess used water by agreement of the district into Sailor's Gulch, a natural watercourse communicating with the south fork of Mokelumne River. The lower property owners, Bert E. Howe and wife, brought suit in Calaveras County against this petitioner for injunction to restrain the corporation from discharging said waters and debris into Sailor's Gulch on plaintiffs' property, and for damages in the sum of $35,000 resulting therefrom. The defendant answered that complaint, denying the material allegations thereof, and affirmatively alleging that the acts complained of were performed by the defendant for a period of more than two years with consent of the plaintiffs and that said damages were fully compensated by subsequent agreement of the parties by furnishing plaintiffs several hundred feet of iron pipe through which they were supplied an agreed quantity of water. No temporary restraining order was made in that suit. After trial of the injunction suit the court adopted findings October 28, 1946, favorable to plaintiffs, determining that defendant did furnish the pipe line and water for the benefit of plaintiffs as alleged in the answer, but held that such service did not fully compensate for all damages incurred by depositing water and debris in said gulch on plaintiffs' property, and that defendant was guilty of wrongfully flowing said water and debris into said gulch upon plaintiffs' property. Judgment was accordingly rendered on the last mentioned date against the defendant, that it be "perpetually enjoined and restrained from flowing or allowing to flow, or discharging or allowing to be discharged any of the water brought by it or them into the watershed of Sailor's Gulch from sources beyond said watershed, or any debris, oil, grease, offal, or waste water or material, the result of any of the work or operations of said corporation, its officers, agents or servants, to, upon or through the lands of plaintiffs described in the complaint on file herein." No damages were allowed in that suit. The judgment was entered November 4, 1946, and notice of the entry of judgment was filed November 12, 1946. Notice of intention to move for a new

trial was given November 15th. The motion for new trial was argued and submitted, and on January 4, 1947, it was denied. On the last mentioned date the defendant's appeal from the judgment was perfected.

After the permanent injunction was rendered and entered, and on November 15th, the same day upon which notice of intention to move for a new trial was filed, the defendant was served with an order to show cause why it should not be adjudged guilty of contempt for violating the injunction. That order to show cause was heard and submitted November 29th on affidavits and counteraffidavits of the respective parties. On December 16th, the trial court made its order determining that the defendant "has violated the order and judgment of the Court made in this action on October 28th, 1946, and is therefore guilty of contempt," and imposed a fine of $100 against the defendant for contempt. The court also ordered that said decree of contempt be suspended for a period of thirty days. That order became automatically effective on November 28, 1946.

The petition for a writ of certiorari was filed in this court January 14, 1947, asking this court to review the proceedings in said injunction case and to cancel and annul the contempt order of December 16, 1946.

On certiorari a reviewing court may not weigh the evidence upon which the petitioner has been found by a trial court to be guilty of contempt, except for the purpose of determining jurisdiction. Its sole province is to determine from the record whether the trial court acted within its jurisdiction in rendering judgment in the contempt proceeding. If the record shows that the trial court had jurisdiction to render the contempt order, the inquiry ceases, and the judgment of contempt is final and conclusive. Under such circumstances the writ should be denied. (*Bridges* v. *Superior Court,* 14 Cal.2d 464, 484 [94 P.2d 983]; *Taylor* v. *Superior Court,* 20 Cal.2d 244, 246 [125 P.2d 1]; *Daily* v. *Superior Court,* 4 Cal.App.2d 127, 134 [40 P.2d 936]; Code Civ. Proc., § 1222; 5 Cal.Jur. 955, § 50; 12 Am.Jur. 407, § 26; 28 A.L.R. p. 49, n.)

Clearly the trial court had jurisdiction of the parties and of the subject matter in the injunction suit to invest it with authority to hear and determine the question of defendant's alleged contempt for violating the judgment for injunctive relief in that case, unless the appeal from the judgment de-

prived the court of jurisdiction. ▮ It is true that a timely and proper notice of appeal vests jurisdiction of the case in the reviewing court to which it is appealed, and divests the trial court of jurisdiction pending the appeal. (*Estate of Hanley*, 23 Cal.2d 120, 123 [142 P.2d 423]; *In re Shafter-Wasco Irr. Dist.*, 55 Cal.App.2d 484, 486 [130 P.2d 755]; 2 Cal.Jur. 415, § 178.) ▮ But the appeal in this case was not perfected until January 4, 1947, nineteen days after the contempt order was rendered. The trial court therefore had jurisdiction to render that contempt order. Nor does it appear that the trial court exceeded its jurisdiction in so doing. Assuming that the final effectiveness of that order is dependent on the validity of the judgment for injunctive relief, which depends on the result of the appeal from that judgment, and that the order is automatically suspended pending the appeal, that fact would not authorize this court to vacate the contempt order on this proceeding of certiorari.

▮ The petitioner correctly asserts that if the injunction in this case is mandatory in character, and not merely prohibitory, it is automatically stayed or suspended pending the appeal. (*Joerger* v. *Mt. Shasta Power Corp.*, 214 Cal. 630, 637 [7 P.2d 706]; *Baar* v. *Smith*, 201 Cal. 87, 105 [255 P. 827]; *Byington* v. *Superior Court*, 14 Cal.2d 68, 70 [92 P.2d 896]; *Feinberg* v. *One Doe Co.*, 14 Cal.2d 24, 28 [92 P.2d 640]; *In re O'Connell*, 75 Cal.App. 292 [242 P. 741]; 5 Cal.Jur. 920, § 26; 3 Am.Jur. 205, § 558.) ▮ Assuming, without so deciding, that the injunction in this case is mandatory in character, it was merely suspended by the subsequent appeal, and it may not be enforced pending the appeal. But that does not render the contempt order void, or authorize this court to vacate and set it aside. That order was made while the trial court had jurisdiction of the case, and before the appeal was perfected. Its final validity may depend upon the outcome of the appeal. We may assume that if and when the injunction is dissolved on appeal, the contempt order will then become *functus officio* because it would have no valid foundation upon which to base the contempt proceeding. In the meantime, since the trial court had jurisdiction to make the order, it should remain intact pending the appeal, although its present effectiveness is stayed or suspended until the appeal is determined. The foregoing conclusion is based on the assumption that the trial court did not exceed its jurisdiction in making the order.

The petitioner concedes the application of the foregoing authorities to the extent of the announced principles in support of which they are cited.     But it is contended that the trial court exceeded its jurisdiction in the injunction suit by invading defendant's property rights of storing and using the water for sawmill and log pond purposes and thereafter flowing it into Sailor's Gulch, as it had previously done for a period of more than two years. In support of that assertion petitioner relies chiefly on the case of *Byington·v. Superior Court, supra,* in which it was held that the trial court exceeded its jurisdiction in granting a mandatory injunction. That case, however, appears to be clearly distinguishable from the facts of this case. We think it is not determinative of this proceeding.

The Byington case was a petition for certiorari in behalf of the Public Utilities Commission of San Francisco to vacate an order of the trial court in Stanislaus County, which was made in a suit instituted by *Meridian, Ltd.* v. *The City and County of San Francisco et al.,* to quiet title to water acquired incident to the Hetch Hetchy project, finding the defendants guilty of contempt for violating the terms of an injunction which was entered therein. In that suit to quiet title to water rights, a decree was rendered June 18, 1936, awarding the city prescriptive rights to store on its property 235,465 acre-feet of water per seasonal year, but enjoining it "from storing water in excess of such amount, which amount represented the then capacity of the city's two reservoirs." From that judgment both parties appealed. While that appeal was pending, and two years after the injunction and decree were rendered, the city increased the height of its dam and enlarged the capacity of its reservoirs, and in May, 1938, filled its reservoirs to capacity with 340,830 acre-feet of water. Those acts were performed long after the appeal was perfected and while it was pending in the Supreme Court. In spite of that fact, upon affidavits presented to the trial court on citation to show cause, that court found the defendant guilty of contempt in violating the injunction by storing in its reservoirs a quantity of water in excess of the amount awarded to it by the decree. Each defendant was fined $100 and upon failure to pay the same, it was ordered that each be imprisoned in jail one day for each $5.00 remaining unpaid.

On certiorari, the Supreme Court reviewed the evidence in the quieting of title suit for the purpose of determining

whether the trial court had jurisdiction to enjoin the defendant, and held that the trial court exceeded its jurisdiction for the reason that the city acquired and owned property rights in the excess water stored in its enlarged reservoirs to the extent of 340,830 acre-feet, and that in so storing and using the water it did not maintain a nuisance or invade the rights of plaintiff. The Supreme Court therefore held that the trial court lacked jurisdiction to determine that defendants were guilty of contempt, and annulled that order. The court said in that regard:

". . . The defendants are and always have been lawfully in possession of their property. In that possession they are engaged in a lawful use thereof. They are not trespassing upon any of the rights of the plaintiff. *They are not maintaining a nuisance.* They are entitled in any event to their proportional share of the water by reason of the fact that their rights and the rights of the plaintiff are correlative, coordinate and in common as to said opposite riparian lands. . . . *The effect of the order, if enforced, would be to disturb a lawful use of property lawfully in possession, and to dispossess the defendants of the use of any of the waters of the stream. It would thus compel the surrender of the lawful possession of real property and would amount to affirmative relief as contemplated by the decision.*" (Italics added.)

The Supreme Court concluded from the foregoing that:

". . . Diverting and storing excess waters to the capacity of the enlarged reservoir was not contemptuous and the order characterizing and punishing it as such was in excess of the respondent court's power and jurisdiction and must be annulled. . . . *At no time has the city or its agents diverted or stored water in such manner or quantity as to interfere with the taking by the plaintiff riparian owner of its decreed quantity of water.*" (Italics added.)

It is apparent that the Byington case, and other similar cases relied upon by petitioner, does not apply to the facts or enjoined rights of plaintiff in the present action. In this case there was no issue regarding riparian rights or an equitable distribution of water. Plaintiffs in this case did not contend that they had a right to the use of the water in question, or that their property rights had been invaded by defendant's storing of water for sawmill or log pond use. On the contrary, the plaintiffs in this case complained of the disposition of the water, together with accumulated "debris, oil, grease, offal, or waste . . . material," by dumping it into

Sailor's Gulch on their land. It was here contended the disposition of the water and debris became a nuisance and detrimental to the rights and property of the plaintiffs. No such issue was involved in the Byington case. The defendant acquired no prescriptive right to dump the water and debris upon plaintiff's land, for it had not previously done so for the statutory period of five years. The property rights of the defendant were not invaded, and the trial court, therefore, did not exceed its jurisdiction in restraining the unlawful disposition of the water and debris. The Byington case is not authority for holding that this court may vacate the order finding petitioner guilty of contempt.

If the trial court should attempt to execute the contempt order pending the appeal, as we assume it will not, proper proceedings to stay such execution may be instituted.

The order of contempt is affirmed.

Peek, J., and Schottky, J. pro tem., concurred.