[Civ. No. 13919. First Dist., Div. One. Feb. 16, 1949.]

HANS HAUMEDER, Appellant, v. PHILIP J. LIPSETT et al., Respondents.

M. F. Hallmark for Appellant.

Buckley & Ehlers for Respondents.

BRAY, J.—A motion by defendants for a summary judgment based on the amended and supplemental complaint, the answer and counterclaim and affidavits, was granted. While plaintiff's notice of appeal, headed "Notice of Appeal by Plaintiff Hans Haumeder from Summary Judgment," reads that the appeal is "from the order entered herein . . . on

the 27th day of April, 1948, granting the Motion of defendants . . . for Summary Judgment,'' and while such an order, if made, would not be appealable, an examination of the clerk's transcript shows that the ''order'' appealed from was, in fact, the summary judgment, and is so treated by the parties.

The main question is whether any triable issues appear in the pleadings and affidavits. The case arises from a medical partnership and a proposed reorganization of that partnership as a nonprofit corporation, which reorganization was never had.

██ On a motion for summary judgment, ''The issue to be determined by the trial court . . . is whether or not defendant has presented any facts which give rise to a triable issue or defense, and not to pass upon or determine the issue itself, that is, the true facts in the case. [Citing cases.] . . .

''The procedure is drastic and should be used with caution in order that it may not become a substitute for existing methods in the determination of issues of fact. . . .

██ ''. . . the affidavits of the moving party, the plaintiff in this case, should be strictly construed and those of his opponent liberally construed. [Citing cases.] ██ And in this connection it may be further observed that the better rule is that the facts alleged in the affidavits of the party against whom the motion is made must be accepted as true, and that such affidavits to be sufficient need not necessarily be composed wholly of strictly evidentiary facts. [Citing cases.]'' (*Eagle Oil & Ref. Co.* v. *Prentice,* 19 Cal.2d 553, 555, 556 [122 P.2d 264].)

With these rules in mind we will examine the pleadings and affidavits. The amended and supplemental complaint (hereafter referred to as the complaint) alleged that plaintiff had formerly been in a partnership with defendants and one Poor, who had previously withdrawn from the partnership; that plaintiff had withdrawn from the partnership, complying with the terms of the partnership agreement; that defendant had exercised an option given in the agreement to purchase plaintiff's share; that the value of his share had been found by an arbitrator, in compliance with the partnership agreement, to be $11,469.35, including unpaid salary; that defendants had not paid any of this amount to plaintiff. The prayer was that defendants be found indebted to plaintiff for that amount, plus interest and costs, to be paid in the manner set forth in the partnership agreement.

The answer and counterclaim (hereafter referred to as the answer) admitted the allegations of the complaint, but alleged that defendant Melvin M. Lipsett had transferred to defendant Philip J. Lipsett all of his interest in the partnership's right to purchase plaintiff's interest, and that plaintiff was indebted to defendant Philip in the sum of $10,730.82 plus interest, balance due upon a promissory note for $22,000, annexed to the answer, dated April 1, 1944, and payable to "Dr. Philip J. Lipsett, or his heirs." The answer further stated that plaintiff and defendants had agreed that any recovery on this indebtedness should be set off against the amount due plaintiff as set forth in his complaint.

Thereupon defendants gave notice that they would apply to the court for a summary judgment on the pleadings on the ground "that there is no defense to the said Counter-Claim of Defendants; that there is only an issue of law to be decided by this Court, and will be based upon the Affidavit of Defendant Philip J. Lipsett . . ." This affidavit stated in more detail the facts set up in the complaint and answer and the indebtedness of plaintiff to defendant Philip.

In opposition to the motion, plaintiff filed affidavits of himself setting forth two claimed defenses to the counterclaim: First, that on April 1, 1946, plaintiff and defendant Philip and another then partner—Poor, had agreed to transfer all of the assets of their medical partnership to a nonprofit corporation and to submit to arbitration (an earlier one than that mentioned in the complaint) certain matters of dispute between them, of which said promissory note was one, and to be bound by the decision of that arbitration; that the decision of the arbitrator was: "It is my decision that in connection with the proposed reorganization on the basis above set forth, Dr. Haumeder's note be cancelled entirely and Dr. Poor's note be reduced to $5,800.00, with the further condition (to the extent that I am permitted to bind the parties to the present dispute) that any additional concessions made by Dr. Lipsett to Dr. Poor be off-set by a similar concession through payment to Dr. Haumeder"; that hence there is nothing due to defendants on the note. Moreover, that defendant Philip refused to transfer the partnership assets to said corporation although plaintiff was ready, able and willing to join in such transfer. Secondly, that defendant Philip Lipsett had orally promised plaintiff that if he would become a cosigner with Philip on a certain promissory note for $8,000 to the Bank of America for the use and benefit of defendant Philip, the latter

would cancel and return to plaintiff the promissory note set forth in the answer; that plaintiff did so cosign the Bank of America note but that Philip refused to cancel or return the other note.

Included in the affidavits is the memorandum of the arbitrator mentioned in the complaint, which gives a history of the relations and interests of the parties in the medical partnership and of the disputes which arose, which the arbitrator was deciding in the decision before quoted.

Plaintiff's position is that there were presented several issues of fact: (1) whether the arbitrator's decision was final or was a conditional decision; (2) whether defendant Philip agreed to abide by the arbitration, refused so to do, and was justified in such refusal; (3) whether Philip agreed to cancel the note in consideration of plaintiff acting as a cosigner on the Bank of America note.

### 1. THE ARBITRATOR'S DECISION[1]

Defendants contended and the court found, that the decision of the arbitrator that plaintiff's note should be cancelled was a conditional one, that it was, as the arbitrator said in his report, in "connection with the proposed reorganization" and that as the reorganization had not occurred plaintiff was not released from his liability under the note. The arbitrator stated in his report that the parties had agreed "that the decision of the [arbitrator] should be final and binding upon them." In several other places in the report the language would indicate that his decision was "in connection with the proposed organization" and hence conditional. However, these somewhat conflicting statements created an ambiguity which require evidence to explain. (*Gibson* v. *De La Salle Institute,* 66 Cal.App.2d 609 [152 P.2d 774].) Respondents contend that the award is not admissible in evidence and cannot be considered by the court, because it shows on its face that it is a *conditional* award, citing *Jacob* v. *Ketcham,* 37 Cal. 197, to the effect that to be admissible an

---

[1]Unless otherwise noted the arbitration and arbitrator's decision referred to herein is the one arising out of the attempt of the partners to reorganize as a nonprofit corporation. The amount fixed in the second arbitration to be paid to plaintiff on his withdrawal from the partnership is not in dispute. The controversy is whether the balance of indebtedness on plaintiff's promissory note still represents a valid claim against plaintiff which was properly set off against plaintiff's claim for the value of his interest in the partnership. The court found that it was, giving plaintiff judgment for only $439.04.

award must be final and conclusive. Appellant argues just as forcibly, that the award shows on its face that it is final and conclusive. This decided difference of opinion as to its construction is some indication of its ambiguity. It is ambiguous, and requires the production of evidence as to the intent of the parties as to what was to happen in case the contemplated reorganization did not take place. "When a contract is in any of its terms or provisions ambiguous or uncertain, 'it is primarily the duty of the trial court to construe it *after a full opportunity afforded all the parties in the case to produce evidence of the facts, circumstances and conditions surrounding its execution and the conduct of the parties relative thereto.'* . . . [Italics added.]" (*Walsh* v. *Walsh*, 18 Cal.2d 439, 443 [116 P.2d 62].)

## 2. AGREEMENT TO ABIDE BY DECISION

 Assuming that the arbitrator's report shows that his decision was conditional upon the reorganization going through, which did not occur, there was raised a very definite issue of fact,—was there, as stated by plaintiff in his affidavits, an agreement between him and Philip to put through the reorganization and to abide by the arbitrator's decision, and if so, did Philip violate that agreement without cause? This question should have been tried and both parties given an opportunity to present evidence upon it.

 Defendants contend that the alleged oral agreement is in violation of the statute of frauds and therefore cannot be a defense or considered by the court. First, say they, it is an agreement to convey to the nonprofit organization assets valued by the arbitrator at over $70,000 and hence violates section 1724, subdivision 1, of the Civil Code, which requires sales over $500 to be in writing; and secondly, if it is an oral contract to make a written contract at a future date it is not binding on the parties. (*Townsend* v. *Flotill Products, Inc.,* 82 Cal.App.2d 863 [187 P.2d 466].)

The facts as alleged in the affidavits and set forth in the arbitrator's reports show that the claimed arrangement was neither a sale nor an agreement to make an agreement. At least, they are subject to that interpretation, and evidence should have been received to determine just what the agreement was. It apparently was one by which the partners desired to reorganize their affairs, have a third party determine the value of their assets and each partner's interest therein, and then to transfer these assets to a nonprofit cor-

poration of which they would be the owners. This agreement would be legal even though the nonprofit corporation had not yet been formed and had not agreed to accept the transfer of assets. No violation of the statute of frauds appears, nor was it an agreement to make an agreement. If there was such agreement and it was breached by defendant Philip without cause, the plaintiff would be entitled to offset against his indebtedness to Philip the damages, if any, resulting from such breach.

### 3. CANCELLATION OF THE NOTE

■ Plaintiff positively stated that in return for his cosigning the Bank of America note, Philip had agreed to cancel all sums due from plaintiff on his note. This raised a very definite triable issue. Defendants attempt to get around that fact by asserting certain legal matters: (1) section 3203 of the Civil Code provides that a renunciation must be in writing unless the instrument is delivered up to the person primarily liable thereon. However, this section is a part of the Uniform Negotiable Instruments Act and applies only to negotiable instruments. ■ The note here is not a negotiable one. It is payable to Philip "or his heirs." To be a negotiable instrument it "must be payable to order or to bearer." (Civ. Code, § 3082.) This note is not.

■ (2) Defendants contend that section 1698 of the Civil Code applies. This section provides that a contract in writing can be altered by a contract in writing or an executed oral agreement and not otherwise. However, the evidence, when produced, might show that the agreement was not to alter the note but to cancel it. In *Pearsall* v. *Henry,* 153 Cal. 314 [95 P. 154, 159], the court said (p. 316-7) : ". . . section 1698 of the Civil Code must be held to be inapplicable where the offer is to prove a substitution of a new agreement for the prior written agreement. This is very clearly shown in the opinion in *Guidery* v. *Green,* 95 Cal. 630 [30 P. 786], where it was held that one sued upon a written agreement could shown by parol evidence that a subsequent written agreement was executed upon the consideration and agreement between the parties that the former agreement should be canceled, and all claims of the plaintiff against the defendant thereunder waived. Speaking of such evidence, the court said: 'Its purpose was to show that that agreement had been canceled by mutual consent, and had no longer any operative effect. Such evidence is as admissible as is oral testimony

that the terms of a written agreement have been fully performed by the parties, or that the instrument evidencing such agreement has itself been canceled and destroyed by the concurrent act of both parties. In either case the object and effect of such evidence is not to change any of the terms of the contract, but to show that the contract has no longer any existence, and therefore cannot be made the basis of an action. The objection that the written agreement could be altered only by an agreement in writing, or by an executed oral agreement (Civ. Code, sec. 1698) has no application to the facts offered to be shown. The offer was to show that the subsequent written agreement had been substituted for the original agreement, and the oral agreement of which proof was offered was the agreement to make this substitution. It was not an offer to prove an executory oral agreement, but an oral agreement that had been fully executed by the substitution. . . .' ''

In *Hooke* v. *Great Western Lumber Co.*, 54 Cal.App. 681 [202 P. 492], the trial court found for plaintiff, on the ground that defendant had breached a written contract to sell spruce cannery shook. Evidence offered by defendants that the parties had orally waived performance of the contract was excluded. The appellate court reversed the judgment, holding that the evidence should have been admitted, and that a waiver, supported by consideration, could be a defense. While the court there did not consider section 1698, probably because the facts showed, as in the case at bar, that the contract was not being altered but terminated, it did consider section 1541 of the Civil Code, which reads: ''An obligation is extinguished by a release therefrom given to the debtor by the creditor, upon a new consideration, or in writing, with or without new consideration.'' The court said (p. 682): ''It is a general rule that a written contract as well as one not in writing may be discharged or modified by a subsequent oral agreement, and that the parol evidence rule does not exclude oral evidence thereof. [Citing cases.] ''

Moreover, the doctrine of equitable estoppel might be applied to the facts as alleged. If plaintiff pledged his credit as a cosigner of the Bank of America note, and made himself liable for the indebtedness thereunder, in consideration for Philip's agreement to cancel the indebtedness due him from plaintiff, Philip might be estopped to set up the statute of frauds, even though it now appears that plaintiff was not

required to make any payment on that note. "While the equitable doctrine of part performance applies only to land contracts, there may be an estoppel which will prevent the party sought to be charged from relying on the absence of a written memorandum." (2 Williston on Contracts 1543.) "Where the defendant by his words or conduct represents that he proposes to stand by the oral contract, and the plaintiff, in reliance thereon, changes his position, the defendant will be *estopped* to set up the bar of the statute." (1 Witkin, Summary of California Law, p. 57.) See, also, *Seymour* v. *Oelrichs*, 156 Cal. 782 [106 P. 88, 134 Am.St.Rep. 154], and *Dean* v. *Davis*, 73 Cal.App.2d 166 [166 P.2d 15]. To determine whether the doctrine actually applies would require a hearing of all the facts.

The defenses set up by plaintiff raised substantial issues to which the language in *McComsey* v. *Leaf*, 36 Cal.App.2d 132 [97 P.2d 242], quoting from *Gravenhorst* v. *Zimmerman*, 236 N.Y. 22 [139 N.E. 766, 27 A.L.R. 1465] applies: "It never could have been, or in justice ought to have been the intention of those who framed our Practice Act and rules thereunder that the decision of such a serious question as this should be flung off on a motion for summary judgment."

Citing *Cowan O. & R. Co.* v. *Miley P. Corp.*, 112 Cal.App. (Supp.) 773 [295 P. 504], respondents contend, in effect, that plaintiff's affidavits are not sufficient, as containing mostly conclusions of law and of fact. As to this contention, the language of the court in *Eagle Oil & Ref. Co.* v. *Prentice*, *supra* (19 Cal.2d 553) is applicable (p. 561): "Plaintiff asserts that defendant's affidavits contain nothing but conclusions of fact and law and are thus insufficient. As we have seen it is not necessary that the averments be rigidly restricted to evidentiary matter. It may be that some of the allegations or statements are somewhat in the nature of conclusions, but we are satisfied that facts within the knowledge of the affiants and to which they are competent to testify, are set forth with sufficient particularity, and from which it appears that a bona fide defense to the action exists. This is especially true when we are mindful of the rule of liberal construction applicable to cases of this character."

We are not passing on the merits of this case. Our primary duty, as it was of the trial court, is to decide whether there are any issues of fact to be tried by a jury, unless a jury is waived. "By an unbroken line of decision in this state since the date of the original enactment of section 437c, the prin-

ciple has become well established that issue finding rather than issue determination is the pivot upon which the summary judgment law turns.'' (*Walsh* v. *Walsh, supra* [18 Cal.2d 439, 441].)

There are issues of fact to be tried in this case. The summary judgment is reversed.

Peters, P. J., and Ward, J., concurred.