[Civ. No. 17267.   Second Dist., Div. Two.   Mar. 20, 1950.]

LOUIS A. NATTINI et al., Respondents, v. J. W. DEWEY et al., Appellants.

Byron R. Bentley and Maurice Gordon for Appellants.

Ralph W. Evans and Wood, Crump, Rogers & Arndt for Respondents.

MOORE, P. J.—As owners of the Arrowhead Alpine Club, a mountain resort and hostelry, appellants employed respondents as managers and caretakers for one year commencing May 25, 1943. The contract of employment was in writing[1] which provided that it could be terminated upon two weeks' notice to respondents "in the event continued operation of the club is found to be impractical by reason of the cancellation or nonrenewal of any of the liquor or wine and beer licenses

---

[1]"The term of this employment shall be from May 25, 1943, to May 25, 1944, and for such additional period as the parties hereto may in writing mutually agree upon. Provided, however, the term hereof may sooner be terminated (upon two weeks' notice to the Nattinis) in the event continued operation of the Club is found to be impractical by reason of the cancellation or nonrenewal of any of the liquor or wine and beer licenses granted by the State of California or by reason of other conditions beyond the control of the Arrowhead Alpine Club.

V.

"The employment of other persons in the operation of the Club and its facilities and their rate of compensation shall be from time to time mutually agreed upon between the parties hereto, it being contemplated that in the event the activities of the club during the winter season should materially lessen that the NATTINIS will personally perform such of the duties in connection with the operation of the Club as are reasonable in order to keep the cost of operation at a reasonable minimum."

granted by the State of California or by reason of other conditions beyond the control of the Arrowhead Alpine Club.'' Respondents sued to recover (1) 25 per cent of the net earnings of the business for each calendar month of the term of employment totaling $3,310; (2) $8,000 loss of compensation. Appellants contended that they were compelled to close business operations on the 29th of October, 1943, and that even if the discharge was wrongful no profits or salary should be allowed for any time after that date.

The court found that respondents were discharged on October 5, 1943, without cause and without notice of more than two days and awarded them judgment in the sum of $4,997.46.

Appellants now demand a reversal on two grounds, to wit, (1) their liability terminated as of the date of closing the club since weather conditions rendered continued operations impractical; (2) error of the court in refusing to make findings that ingress and egress to and from the club after October, 1943, was over a secondary county road about 1½ miles in length from a state highway; that such secondary road was maintained by the county of San Bernardino including the removal of snow; that in September, 1943, the county highway commissioner announced publicly that the county would not remove the snow from any county road during the approaching winter, and the snow that fell was not removed from the secondary road leading to the club; that the club ceased its operations after October 29 and did not resume operations until May 13, 1944.

To the first contention the answer is that respondents testified and the court found that they were unceremoniously discharged on October 5, 1943, and were required at that time to leave the club within two days; that plaintiffs had fairly and reasonably complied with their agreement; that there was no just cause or reason under said agreement for the discharge of respondents at any time and they stood ready, able and willing to perform. Moreover, the court found that at no time during the term fixed by the agreement ''did continued operation of the club become impractical by reason of . . . other conditions beyond the control of defendants.'' There is substantial testimony to support such findings. It is true that appellants introduced proof of ice and snow on the secondary road; of the county's announcement that it would not remove such snow; of the facts that it was not removed but was there from February until April and that snow fell in that region to a

depth of 6 feet. But conceding arguendo that such conditions prevailed, appellants could not, after discharging respondents without cause on two days' notice where the contract provided for a notice of two weeks, assert the county's announcement and the presence of snow and ice at a later date as grounds for the discharge. ▇ The contract says nothing about the inability of appellants to operate the club because of snow on the roads. In the interpretation of contracts it is the rule that a word of general meaning used after words of a specific class shall be deemed to include only things that refer to and are akin to the specified class. (*Pasadena University* v. *County of Los Angeles,* 190 Cal. 786, 790 [214 P. 868].) Therefore it is a reasonable construction of the contract that the phrase "by reason of other conditions beyond the control of" refers to such class of occurrences as the "nonrenewal of any liquor or wine and beer licenses granted by the State" and not to snowfall on the road.

It is unreasonable to conceive that such a contract could have been made with the prospect of cancellation by reason of snow. One of the attractions of the rural roads and mountain retreats is the presence of snow in winter. Hence the parties must be deemed to have contracted with a knowledge of the frigid conditions that beset the San Bernardino mountains in winter. Since the coming of the snow season was a more probable event than the cancellation of liquor licenses, it is a reasonable interpretation of the writing that the phrase "other conditions beyond the control of the . . . Club," contemplated something other than snow on the road. ▇ If appellants had intended to make proof of the snowfall they should have pleaded it as a defense. They did not do so. Respondents alleged that "no other conditions beyond the control of the defendants made it impractical to operate the said property." To this appellants pleaded (1) a general denial and (2) "that plaintiffs were discharged for cause in that plaintiffs wilfully breached the terms of the agreement aforesaid and were guilty of misconduct in the performance of their services" and that the resort was closed from October 10, 1943, to June 1, 1944. Ice and snow were not mentioned. Appellants' act of discharging respondents on October 5 fixed their relation to their former managers. The repudiation of the contract by appellants created a new status which was not modified by the snowfall.

▇ The contract provided that "the term hereof *may* be sooner terminated (upon two weeks' notice to the Nattinis)

in the event continued operation of the club is found to be impractical.'' That language granted appellants an election to terminate. It did not mean that a termination would automatically result from the occurrence of the anticipated condition. The language clearly implied that the notice was the *sine qua non* to the termination of the employment. Since the termination was dependent upon the choice of appellants, their privilege not having been exercised in the prescribed manner, there was no intention, choice or preference indicated in order to effect such termination and there was none.

Appellants conceive that they could discharge respondents, plead a negative pregnant and thereafter choose what conditions should effect a termination of the contract. While there was proof of the snowfall and evidence that the county did not remove the snow from the secondary road, appellants made no pretense of proving that they themselves could not at reasonable expense have removed the snow; in fact there was no evidence that the snow was not removed from the road.

Appellants contend that their proposed finding was material ''because if the road was not accessible during the winter months'' it would of necessity follow that it was not practical to operate the club. The proposed finding contains no statement that the club was inaccessible during the winter. It merely says that the road ''was thereby made impassable by automobiles at various times'' but does not modify the ''times'' with any phrase as to the number or duration thereof.

After evaluating the entire proof before it the court made finding 15 that ''at no time during the term fixed by said agreement did continued operation of The Club become impractical by reason of the cancellation or nonrenewal of any of the liquor or wine or beer licenses granted by the State of California or by reason of other conditions beyond the control of the defendants. The business of The Club was being operated on October 5, 1943, and such operations continued for at least a few weeks thereafter, and at all times during the term fixed by said agreement subsequent to October 5, 1943, The Club employed a man and his wife to reside upon the premises of The Club and to be in charge thereof as managers or caretakers or both.'' With the last sentence the court sealed the fortunes of this action. If the club employed another couple to reside upon the premises and to be managers thereof at the same salary as the minimum wages of respondents,

appellants thereby established their obligation to respondents who were discharged without cause. The latter could have served as caretakers for the balance of their term and thereby have obviated the expense of food and rent which constitutes a portion of their damages.

Appellants in their attack on finding 15 insist that the undisputed evidence shows that it was impractical to operate the club under the conditions of the winter subsequent to the discharge "in view of the inaccessibility to the club," because of the county's announcement and in the light of the intention of the parties "at the time the contract was entered into." There was neither finding nor proof that the continued operation of the club ever became impractical. If a condition did arise beyond the control of appellants it was incumbent upon them to prove that such condition beyond their control did arise and that it made continued operation of the club impractical and that they terminated the contract by reason of such condition. They made no such proof. Neither did they prove that it was necessary to keep the road so free from snow as to be without temporary interruption.

The basis of the award to respondents was $18.50 per day. Since the justice of that charge is not attacked, there is no reason for disturbing the judgment. Respondents were entitled to recover their damages from October 7, 1943, to May 23, 1944.

Judgment affirmed.

McComb, J., and Wilson, J., concurred.