[Civ. No. 15628.　First Dist., Div. One.　Feb. 25, 1954.]

GEORGE WAGNER, Appellant, v. JOSEPH SHAPONA et al., Respondents.

Joseph T. Curley and Marvin C. Hix for Appellant.

George V. Curtis for Respondents.

FINLEY, J. pro tem.*—This appeal is from a declaratory judgment interpreting the provisions of a lease; from a subsequent order amending the judgment, which order was made after notice of appeal from the judgment was filed, and from an order for a writ of possession of the leased premises, made after a notice of appeal from the amended judgment was filed.

Respondents, as partners, held a master lease on a store at 570 Market Street, San Francisco. Respondent De Marco was the owner of a smoke shop in front of the store. In June of 1950 De Marco agreed to sell the smoke shop to appellant, and a lease was prepared by respondents and executed by the parties, subleasing the smoke shop premises to appellant

---

*Assigned by Chairman of Judicial Council.

from July 1, 1950, to December 25, 1953. On October 17, 1951 respondents delivered a letter to appellant stating that they were cancelling the lease and giving notice to vacate the premises January 1, 1952. There followed a dispute over the lease provisions concerning the right in respondents to cancel, and this action seeking declaratory relief was filed by appellant, the lessee. The trial court made findings and entered judgment that respondents were entitled to give the notice, and that appellant was under a duty to surrender the lease and the leased premises upon refund to him by lessors of One Hundred Fifty ($150) Dollars deposited with lessors as security for the performance of the terms of the lease. Costs were awarded to respondents. The court also awarded to respondents Five Hundred ($500) Dollars attorney's fees. Appellant filed notice of appeal and several days later a motion for a new trial, together with a motion to set aside the judgment. The motion for a new trial was heard and denied. Although no cost bill had been filed by respondents, the court, in the order denying the motion for a new trial, amended the judgment by directing that the attorney's fees be a part of the costs, and by adding to the requirement that the $150 be returned to appellant, the further requirement that he receive sixty (60) days' notice of cancellation of the lease as conditions precedent to imposing upon appellant the duty to surrender. Notice of appeal from this amended judgment was filed. Later, upon ex parte application by respondents and without notice to appellant, the court, upon an affidavit by respondents' attorney that the required conditions had been complied with, made an order directing the issuance of a writ of possession and directing the sheriff to enforce the provisions of the judgment. Appellant also appealed from this order.

No point is made of the fact that after the first notice of appeal was filed a notice of motion for a new trial was later filed and heard, and as a part of the order denying the motion the trial court amended the findings and judgment.

The points urged for reversal are as follows:

"1. Failure of the court to make a finding on the issue of a conversation between plaintiff and defendant De Marco, requires a reversal.

"2. The court ignored all rules of construction of a lease in deciding that paragraph 27th of the lease was not ambiguous and that it could be cancelled at the mere desire of the defendant lessors to do so.

"3. A judgment for attorney's fees can be awarded to a lessor only when he is the plaintiff, and only as a part of the costs upon a proper cost bill being filed and judgment was therefore erroneous in that the lessors were not plaintiff and they did not file any cost bill, if it is assumed they were otherwise entitled to attorney's fees, *as a part of the costs of such suit.*'

"4. The order for the writ of possession to issue was void."

The appeal was presented on a settled statement in lieu of reporter's and clerk's transcripts. This settled statement sets forth a stipulation concerning the facts, which stipulation was entered into at the time of trial in lieu of taking testimony. Whether the conversation referred to in point 1 above actually took place was the only disputed issue of fact. In this alleged conversation appellant claims to have questioned the interpretation of paragraph 27th of the lease and to have asked De Marco what it meant and that De Marco's reply was: "Forget it. You can stay here as long as we have our lease." De Marco denies that this conversation took place.

Paragraph 27 of the lease reads as follows:

"In the event that the Lessor desires to cancel this lease on or after January 1, 1952, *for causes not otherwise mentioned in this lease,* he shall be permitted to do so upon mailing to the Lessee to the address hereinabove named a sixty (60) day notice of the desire so to do; and the Lessee agrees to surrender this lease, and the premises covered thereby, together with all of his interests therein, upon the refund to him by the Lessor of the sum of ONE HUNDRED FIFTY ($150.00) and no/100 DOLLARS, deposited by Lessee as security hereunder, as in paragraph 'TWENTY-EIGHTH' hereof provided, less any unpaid rentals or charges against Lessee." (Emphasis added.)

Respondents interpret the provisions of this paragraph to mean that they were entitled to cancel the lease upon their mere desire to do so. Appellant contends that they could cancel only for some actual cause, probably a cause of the kind and character indicated in the lease but not specifically mentioned. He also claims that if there is an ambiguity the alleged conversation with De Marco which he claims took place the day before the lease became effective should have been considered by the court in determining what the parties intended.

The first point to decide is whether, if the alleged conversation did take place, it could affect the decision. If it

would not, then it would not be error for the trial court to have failed to make a finding concerning it.

Assuming that it took place, we cannot agree with appellant that the effect of the alleged conversation would be to explain an ambiguity in the lease. The expression, "Forget it. You can stay here as long as we have our lease," does not explain the lease but either extinguishes the right in lessors to cancel under the terms of the provision questioned, or works an estoppel which would deny lessors the privilege to claim the right of cancellation under that provision. For all practical purposes the effect would be the same.

Section 1640 of the Civil Code provides: "When, through fraud, mistake, or accident, a written contract fails to express the real intention of the parties, such intention is to be regarded, and the erroneous parts of the writing disregarded."

Section 1856 of the Code of Civil Procedure reads: "When the terms of an agreement have been reduced to writing by the parties, it is to be considered as containing all those terms, and therefore there can be between the parties and their representatives, or successors in interest, no evidence of the terms of the agreement other than the contents of the writing, except in the following cases:

"1. Where a mistake or imperfection of the writing is put in issue by the pleadings;

"2. Where the validity of the agreement is the fact in dispute.

"But this section does not exclude other evidence of the circumstances under which the agreement was made or to which it relates, as defined in section eighteen hundred and sixty, or to explain an extrinsic ambiguity, or to establish illegality or fraud. The term agreement includes deeds and wills, as well as contracts between parties."

Actual fraud, so far as the term is applicable here, is defined in section 1572 of the Civil Code as follows:

"Actual fraud, within the meaning of this chapter, consists in any of the following acts, committed by a party to a contract, or with his connivance, with intent to deceive another party thereto, or to induce him to enter into the contract: . . .

"4. A promise made without any intention of performing it; or,

"5. Any other act fitted to deceive."

Section 1574 of the Civil Code provides: "Actual fraud is always a question of fact."

A study of the language of these code sections makes it fairly obvious, we believe, that, should the fact be established that the oral promise claimed by appellant was actually made by respondent De Marco, it could, as a matter of law, affect the decision of the trial court. The effect of the promise, if made, would not be to vary the mutual obligations owing under the lease, but to deprive the lessors of a unilateral right to terminate it after a certain date for unspecified reasons. It is true that the promise is alleged to have been made by De Marco after the lease had been signed by the parties, but according to the complaint it was before appellant had taken possession of the premises or had paid the full purchase price for the store, or had paid any rent under the lease. It may be said that after the lease was signed the obligations thereunder were fixed so that subsequent representations or promises would make no difference, or that there would be no consideration moving from the lessee for the oral promise by De Marco. But the purchase of the "business, furniture, fixtures, goodwill and name," as set forth in the complaint was a separate transaction quite outside the scope of the lease, and the fact that appellant assumed possession of the business and paid the purchase price after the alleged promise was made might well be viewed as consideration for the promise. There is, of course, the further fact that De Marco, as an individual, owned and sold the business to appellant, while the lease was with De Marco and Shapona as partners. But appellant alleges and respondent De Marco admits that the execution of the lease and the bill of sale of the store were all a part of the same transaction, and even if there was no consideration moving to the partnership, adequate to bind the partners to a promise, De Marco as a partner could, under the law, commit a fraud on behalf of the partnership, and if he made a promise on its behalf which he did not intend should be kept, even though his secret object was to induce appellant to benefit him personally by proceeding with his purchase and by paying the balance of the purchase price to him, De Marco, this would still be a fraud for which the partnership would be responsible. (Corp. Code, §§ 15013-15015; *Kadota Fig Assn.* v. *Case-Swayne Co.*, 73 Cal.App.2d 796 [167 P.2d 518]; *Gift* v. *Ahrnke*, 107 Cal.App.2d 614 [237 P.2d 706].) A representation not merely promissory in nature but falsely representing a state of mind at a given moment constitutes fraud.

(*Scaroon Manor Operating Corp.* v. *W. P. & L. Realty Corp.*, 136 Misc. 910 [241 N.Y.S. 229]; *Benson* v. *Hamilton,* 126 Cal.App. 331 [14 P.2d 876].)

It follows that, as a matter of law, the alleged oral promise by De Marco, if made, could have been found by the trial court to amount to a fraud upon appellant, and, under the provisions of section 1640 of the Civil Code, the "real intention of the parties . . . regarded" and the "erroneous parts of the writing disregarded," or the lease could, under the provisions of section 1856 of the Code of Civil Procedure, be considered not to contain all the terms of the agreement on account of the fraud or because of "imperfection of the writing . . . put in issue by the pleadings" between the parties, and the substance of De Marco's promise could have been considered by the court as one of the terms of the lease.

Further, if the language in the case of *Hooke* v. *Great Western Lbr. Co.,* 54 Cal.App. 681 [202 P. 492], represents a correct statement of the law this case might be considered as falling within the provisions of section 1541 of the Civil Code, which provides: "An obligation is extinguished by a release therefrom given to the debtor by the creditor, upon a new consideration, or in writing, with or without new consideration."

Although the words "debtor" and "creditor" are used in this section, it has been applied in many cases not involving that relationship, in the sense that the mere owing of money was involved. That section was under consideration by the court in *Hooke* v. *Great Western Lbr. Co., supra,* 54 Cal.App. 681, which was an action to recover damages for breach of an agreement to deliver certain lumber products. The defendant offered to prove by oral testimony that the performance of the contract had been waived by the plaintiff and that the contract had been by mutual agreement abandoned. The trial court refused to hear evidence upon these questions upon the ground that the contract, being in writing, a waiver or abandonment thereof could only be shown by a writing. The court stated, at page 682: "It is a general rule that a written contract as well as one not in writing may be discharged *or modified* by a subsequent oral agreement, and that the parol evidence rule does not exclude oral evidence thereof." (Citing *Beach* v. *Covillard,* 4 Cal. 315; *Gardiner* v. *McDonogh,* 147 Cal. 313 [81 P. 964]; *Guidery* v. *Green,* 95 Cal. 630 [30 P.

786]; *Arsenio* v. *Smith,* 50 Cal.App. 173 [194 P. 756].) (Emphasis added.)

We do not believe that these California cases support inclusion of the words "or modified" in the rule as stated in the quotation above or that the inclusion of those words was necessary or proper to a decision therein since the modification of a contract was not involved in *Hooke* v. *Great Western Lbr. Co., supra,* 54 Cal.App. 681. That case has been cited a great number of times in support of the proposition that a written contract as well as one not in writing may be *discharged, cancelled* or *superseded* by a subsequent executory oral agreement. The exact language quoted above is quoted without comment in *Haberman* v. *Sawall,* 72 Cal.App. 576 [237 P. 776], and *Haumeder* v. *Lipsett,* 90 Cal.App.2d 167 [202 P.2d 819]. Neither of these cases involved the *modification* of a written agreement by a subsequent oral agreement. The Haberman case involved a total abandonment and termination by verbal agreement. *Haumeder* v. *Lipsett* was an appeal from a summary judgment based upon the pleadings and involved an alleged oral agreement concerning a non-negotiable note, and although in the Haumeder case the language above set forth was quoted from the Hooke case, the court said, at page 174: "Defendants contend that section 1698 of the Civil Code applies. This section provides that a contract in writing can be altered by a contract in writing or an executed oral agreement and not otherwise. However, the evidence, when produced, might show that the agreement was not to *alter* the note but to cancel it." (Emphasis added.)

The words "*alter*" and "*modify*" are synonymous. It would therefore seem that the court indicated pretty clearly that if "the evidence, when produced" would have shown an agreement to alter or modify the note it would have been in conflict with the provisions of section 1698 of the Civil Code and therefore ineffective as a *contractual* modification.

The extinguishment or waiver of a right to cancel under one particular provision in a lease would undoubtedly amount to a modification or alteration thereof and an attempt to do so by oral agreement would seem to fall within the provisions of section 1698 of the Civil Code. But, assuming such a promise by the lessor coupled with a change of position by the promisee in reliance thereon and a subsequent attempted violation by the promisor, could not the doctrine of equitable estoppel be invoked in aid of the promisee? In volume 1, Witkin's Summary of California Law, page 57, this

doctrine is stated as follows: "Where the defendant by his words or conduct represents that he proposes to stand by the oral contract, and the plaintiff, in reliance thereon, changes his position, the defendant will be *estopped* to set up the bar of the statute." (See *Seymour* v. *Oelrichs,* 156 Cal. 782 [106 P. 88, 134 Am.St.Rep. 154]; *Wilson* v. *Bailey,* 8 Cal.2d 416 [65 P.2d 770]; *Grant* v. *Long,* 33 Cal.App.2d 725 [92 P.2d 940]; *Nicolds* v. *Storch,* 67 Cal.App.2d 8 [153 P.2d 561]; *Dean* v. *Davis,* 73 Cal.App.2d 166 [166 P.2d 15].)

■ Furthermore, in order for the doctrine to apply it is unnecessary to show an antecedent fraud. The estoppel arises, irrespective of such fraudulent intent, if the effect of setting up the statute would be to perpetrate a fraud. (*Seymour* v. *Oelrichs, supra,* 156 Cal. 782.)

■ Thus, upon several theories the decision here could turn on the question of whether respondent De Marco did or did not make the alleged promise to appellant. The stipulation between counsel was that if appellant took the stand he would testify that the promise was made and that if respondent De Marco took the stand he would deny it. The stipulation presented a material issue of fact and it was reversible error for the trial court not to make a finding on it. (*Tucker* v. *United Railroads,* 171 Cal. 702 [154 P. 835]; *De Garmo* v. *Goldman,* 19 Cal.2d 755 [123 P.2d 1]; *Due* v. *Swartz,* 22 Cal.App.2d 217 [70 P.2d 716].)

Turning now to the dispute over interpretation of the cancellation provision in paragraph 27th of the lease, it is noted that respondent takes the position that the trial court having found: "That the language 'for causes not otherwise mentioned in this lease' contained in Paragraph Twenty-seventh of said lease is not ambiguous," that this finding is binding upon an appellate court. This, however, is not the law.

■ Whether or not a writing is ambiguous is a question of law, and the lower court's finding on this issue is not binding on the appellate court. (*Leonard* v. *Huston,* 122 Cal.App.2d 541 [265 P.2d 566]; 4 Cal.Jur. 10-Yr.Supp.; 1943 Rev. sec. 192, p. 148; *Brant* v. *California Dairies, Inc.,* 4 Cal.2d 128 [48 P.2d 13]; *Lane-Wells Co.* v. *Schlumberger etc. Corp.,* 65 Cal.App.2d 180 [150 P.2d 251].)

We do not agree with the finding by the trial court that the language "for causes not otherwise mentioned in this lease" as the same appears in paragraph twenty-seventh of the lease is not ambiguous. As will be seen from a reading of this paragraph, which is hereinabove set forth in full, the

language just quoted stands by itself and refers to nothing in particular which could be pinned down as a cause actually envisioned by the parties. What do the words ''not otherwise mentioned'' mean in context as they appear? Otherwise than how? If we exclude the word ''otherwise,'' the ambiguity would still remain for would the word ''causes'' refer to any reason whatsoever at the mere whim of lessors or must it indicate some cause ordinarily recognized under the law as a valid cause for cancellation? ▉ Lessors prepared the lease and if they simply desired to reserve unto themselves the option to cancel it at any time on or after January 1, 1952, for any reason at all, or even without reason, that option could easily have been so stated in simple, clear and unambiguous terms and would have been perfectly valid if agreed to by the lessee. (51 C.J.S. p. 656; *O'Connor* v. *West Sacramento Co.,* 189 Cal. 7 [207 P. 527].) Not having done so it must be considered that lessors had some other purpose in mind in using the language they did. ▉ It is ordinarily not the court's function to determine why any particular language was used, but to determine as nearly as possible what the parties meant or intended by the language they did use, giving effect if reasonably practicable to every provision and part thereof. (*La Lumia* v. *Northern Calif. Packing Co.,* 75 Cal.App.2d 917 [172 P.2d 94].) As was said in *Hyatt* v. *Allen,* 54 Cal. 353, at page 358: ''. . . it is our duty to so construe every provision of a written instrument as to give force and effect, not only to every clause but to every word in it, so that no clause or word may become redundant, unless such construction would be obviously repugnant to the intention of the framers of the instrument, to be collected from its terms, or would lead to some other inconvenience or absurdity.'' (See also Civ. Code, § 1641, Code Civ. Proc., § 1858; *Cummins* v. *Bank of America,* 17 Cal.2d 846 [112 P.2d 593]; *Manasse* v. *Ford,* 58 Cal.App. 312 [208 P. 354]; *Purdy* v. *Buffums, Inc.,* 95 Cal.App. 299 [272 P. 770].)

▉ It is a general and well-established rule of construction that provisions in a contract will be construed, if possible, to avoid a forfeiture. (Civ. Code, § 1442; *O'Morrow* v. *Borad,* 27 Cal.2d 794 [167 P.2d 483]; *Universal Sales Corp.* v. *California etc. Mfg. Co.,* 20 Cal.2d 751 [128 P.2d 665]; *Ballard* v. *MacCallum,* 15 Cal.2d 439 [101 P.2d 692]; *Milovich* v. *City of Los Angeles,* 42 Cal.App.2d 364 [108 P.2d 960]; *Nelson* v. *Schoettgen,* 1 Cal.App.2d 418 [36 P.2d 665]; *Quatman* v. *McCray,* 128 Cal. 285 [60 P. 855]; *McNeece* v. *Wood,* 204 Cal.

*280* [267 P. 877].) ▮▮ A right in a lessor to cancel for "causes," meaning just anything, would amount to a forfeiture imposed at will by the lessor. ▮▮ Furthermore, the burden of establishing the right to a forfeiture is upon the party claiming the right. As stated in *Burns* v. *McGraw*, 75 Cal.App.2d 481, at page 485 [171 P.2d 148] : " 'We have paid due regard to the rules of law that where there is a claim made that a forfeiture of rights under a written instrument has occurred, the burden is upon the party making the point "to show that such was the unmistakable intention of the instrument." (*Quatman* v. *McCray,* 128 Cal. 285 [60 P. 855]) ; and that the courts tenaciously cling "to the rule that forfeitures of estates and restraints upon alienation should not be enforced except when the terms of the conditions are so plain as to be beyond the province of construction" (*Randol* v. *Scott,* 110 Cal. 590 [42 P. 976] . . .' The code section just ·mentioned [Civ. Code,, § 1442], provides that 'A condition involving a forfeiture must be strictly interpreted against the party for whose benefit it is created.' " (See, also, *Ser-Bye Corp.* v. *C. P. & G. Markets, Inc.,* 78 Cal.App. 2d 915 [179 P.2d 342].) In *Cleary* v. *Folger,* 84 Cal. 316, at page 321 [24 P. 280, 18 Am.St.Rep. 187], the court said: "Forfeitures, as such, are not favored by the courts, and are never enforced if they are couched in *ambiguous* terms." (Emphasis added.)

Another rule of interpretation applicable here is stated in *Nattini* v. *Dewey,* 96 Cal.App.2d 545, wherein the court (p. 547 [216 P.2d 46]) was considering a contract containing language authorizing its cancellation for certain specified reasons followed by the words, "or by reason of other conditions beyond the control of the Arrowhead Alpine Club." ▮▮ The court said, at page 548 : "In the interpretation of contracts it is the rule that a word of general meaning used after words of a specific class shall be deemed to include only things that refer to and are akin to the specified class." (*Pasadena University* v. *County of Los Angeles,* 190 Cal. 786, 790 [214 P. 868].) Therefore it is a reasonable construction of the contract that the phrase 'by reason of other conditions beyond the control of' refers to such a class of occurrences as . . . [naming some of those specified]."

In view of the considerations discussed above we must interpret the words "for causes not otherwise mentioned in this lease" appearing in paragraph twenty-seventh of the lease involved here to refer to generally recognized causes for can-

cellation of the same general nature or comparable class as those mentioned in the preceding paragraphs and not to just anything that the lessors might choose to denominate or consider to be "causes," regardless of how trivial and inconsequential they might be.

The point that the trial court erred in awarding attorney's fees to the lessor as a part of the costs we find to be not well taken.

Paragraph thirteenth of the lease, so far as it is applicable here, reads as follows: "That in case suit shall be brought . . . for declaratory relief to determine the rights of the parties hereunder, the Lessee will pay to the Lessor a reasonable attorney's fee which shall be fixed by the court as a part of the costs of such suit. . . ."

The case of *Lewis & Queen* v. *S. Edmondson & Sons*, 113 Cal.App.2d 705 [248 P.2d 973], was an action brought on a labor and material bond which contained this provision (p. 708): ". . . and also in case suit is brought on this bond, a reasonable attorney's fee to be fixed by the court." The court also called attention to section 4207 of the Government Code, applicable to the situation there, which reads in part: "Upon the trial of the action, the court shall award to the prevailing party a reasonable attorney's fee, *to be taxed as costs,* and to be included in the judgment thereon rendered." (Emphasis added.) The court then went on to say, at pages 708-709: "It is likewise settled that the trial court has power to determine what are reasonable attorney's fees without any testimony on the subject and without making any specific finding. (*Rosslow* v. *Janssen,* 136 Cal.App. 467, 470 [1] [29 P.2d 287]; *Los Angeles* v. *Los Angeles-Inyo Farms Co.,* 134 Cal.App. 268, 274 [4] [25 P.2d 224].)

"In the present case the judge had before him the entire record of the proceedings which had taken place and there was no abuse of discretion in fixing the attorney's fee in the sum of $3,500.

"*Fourth: Was it error for the trial court to award plaintiffs' attorney's fees in the judgment in the absence of either a motion to have such fees taxed as costs, or a claim therefor in the cost bill which they filed?*

"No. Where, as in the present case, a statute provides 'that a reasonable attorney's fee, to be taxed as costs' shall, under certain specified conditions, be awarded to plaintiffs, such language does not expressly or impliedly require that a

cost bill be filed pursuant to the provisions of section 1033 of the Code of Civil Procedure, but if the attorney's fees are fixed by the court and included in the judgment, such procedure is adequate. This is a proper method of allowing plaintiffs' attorney's fees. (*Sunset Lumber Co.* v. *Smith*, 95 Cal.App. 307, 319 [19] [272 P. 1068].) In the present case the foregoing procedure was properly followed by the trial court." (See also *Pehau* v. *Stewart*, 112 Cal.App.2d 90, at p. 97 [245 P.2d 692].)

Turning now to a consideration of the order for the writ of possession and directing the sheriff to enforce the provisions of the judgment; were the judgment valid the order for the issuance of the writ would not have been invalid for in an action for declaratory relief, equity having once obtained jurisdiction of a cause will dispose of the entire controversy. (10 Cal.Jur., § 40, p. 496; *Lyon* v. *Goss*, 19 Cal.2d 659 [123 P.2d 11].) The judgment declared that appellant was under a duty to surrender the premises upon the return of his $150 security deposit. Compliance with this condition precedent and also the giving of the 60-day notice could properly be shown by affidavit on an ex parte application. (See Code Civ. Proc., § 2009; *Howland* v. *Scott*, 215 Cal. 301 [9 P.2d 824]; *Adams* v. *Bell*, 219 Cal. 503 [27 P.2d 757]; *Peers* v. *Stoll*, 32 Cal.App.2d 511 [90 P.2d 119].) This was done and the making of an ex parte order for writ of possession was not error in and of itself.

Furthermore, the filing of an appeal does not stay a judgment for delivery of possession of real property in the absence of a stay bond. (Code Civ. Proc., § 945.)

The filing of a notice of appeal, however, divests the trial court of jurisdiction to later amend or modify its judgment even though this amendment or modification came about as a part of the proceedings in ruling on a motion for a new trial filed by appellant after filing his notice of appeal.

In the case of *In re Shafter-Wasco Irr. Dist.*, 55 Cal.App. 2d 484, at page 486 [130 P.2d 755], the rule is stated as follows: "When the notice of appeal is properly filed it has the effect of removing the cause from the jurisdiction of the trial court. 'It was no longer pending therein for the purpose of amending the judgment or of vacating it for errors apparent on the face of the record. The consent of the parties could not reinvest the court with jurisdiction of the subject matter.' (*Kinard* v. *Jordan*, 175 Cal. 13 [164 P. 894].) After a timely and valid notice of appeal has been given the juris-

diction of the trial court as to any matter relating to the correctness or validity of the judgment is suspended and the power to determine those questions rests in the court in which the appeal is pending. (*Parkside Realty Co.* v. *MacDonald,* 167 Cal. 342 [139 P. 805]; *Field* v. *Hughes,* 134 Cal.App. 325 [25 P. 2d 241]; *Linstead* v. *Superior Court,* 17 Cal.App. 2d 9 [61 P.2d 355].)'' (See also *Estate of Hanley,* 23 Cal. 2d 120 at p. 123 [142 P.2d 423, 149 A.L.R. 1250]; *Associated Lbr. etc. Co.* v. *Superior Court,* 79 Cal.App.2d 577 [180 P.2d 389]; *Kadota Fig Assn.* v. *Case-Swayne Co.,* 73 Cal.App.2d 815 [167 P.2d 523].)

We hold, therefore, that the attempted modification of the original judgment after notice of appeal had been filed was a nullity.

For the above reasons the judgment and the orders appealed from are reversed.

Peters, P. J., and Bray, J., concurred.