[L. A. No. 7003.  In Bank.—April 11, 1923.]

## PASADENA UNIVERSITY (a Corporation), Appellant, v. COUNTY OF LOS ANGELES, etc., Respondent.

[1] TAXATION — EDUCATIONAL INSTITUTIONS — SECTION 1A, ARTICLE XIII, CONSTITUTION—CONSTRUCTION.—Under section 1a of article XIII of the constitution, which provides, "Any educational institution of collegiate grade, within the State of California, not conducted for profit, shall hold exempt from taxation its building and equipment, its grounds within which its buildings are located, not exceeding one hundred acres in area, its securities and income used exclusively for the purposes of education," exemption is granted to an institution of collegiate grade as a whole and not otherwise.

[2] ID.—INSTITUTION OF DIFFERENT GRADES—CLASSIFICATION OF UNIVERSITY.—A university made up or composed of a number of grades or groups of students ranking in classification below the grade defined as a collegiate grade, and whose largest number of enrolled students are not within the collegiate grade classification, is not and cannot be characterized as an institution exclusively of any particular grade, but one of many grades.

[3] STATUTORY CONSTRUCTION—ENUMERATION OF PARTICULAR CLASSES OR PERSONS—SUBSEQUENT GENERAL WORDS.—Where general words follow the enumeration of particular classes of persons or things, the general words will be construed as applicable only to persons or things of the same general nature or class as those enumerated; and words used in a statute are to be read in a natural and ordinary sense.

[4] ID.—EDUCATION—STATUTES—TAXATION.—While it is the duty of courts in construing statutes enacted for the benefit of institutions designed to promote education generally to indulge in reasonable liberality to the end that the evident purposes of such legislation may become effective, it is equally true that grants of exemption from taxation cannot be allowed unless the intention to do so is expressed in direct terms ' or is fairly inferable from the language of the instrument by which the right is claimed.

[5] TAXATION — CORRECTION OF ASSESSMENT-ROLL — SECTION 3881, POLITICAL CODE.—Under section 3881 of the Political Code, permitting the assessor to correct an assessment at any time after the assessment has been made and prior to the sale of the property assessed for delinquent taxes, an assessment-roll erroneously

---

1. Exemption from taxation of educational institutions, notes, 1 Ann. Cas. 839; 10 Ann. Cas. 671; 21 L. R. A. (N. S.) 164; .L. R. A. 1917E, 1097.

showing a notation of tax exemption against the property of a university not wholly of collegiate grade was properly corrected, after application by the assessor with the consent of the district attorney to the board of supervisors and after the university filed its objections to the change, where the property of the university was listed and described and the valuation thereof entered on the assessment-roll and the rate of the tax levy had been established by the board of supervisors, and the carrying forward of the amount of tax was but a mere mathematical calculation and the amount of taxes assessed against the university was easily determinable by the application of the simple rule of mathematical computation.

APPEAL from a judgment of the Superior Court of Los Angeles County.   J. P. Wood, Judge.   Affirmed.

The facts are stated in the opinion of the court.

Newby & Palmer for Appellant.

A. J. Hill, County Counsel, and Gordon Boller, Deputy County Counsel, for Respondent.

SEAWELL, J.—This cause is before us after decision by the district court of appeal of the second district, division one.   The appeal is from an order denying appellant relief from a property tax assessed against its property for the year 1919.

Appellant, an institution of learning, chartered or incorporated by virtue of the laws of this state, claims that it is an educational institution of *collegiate grade* and being such lays claim to those certain exemptions allowed by the provisions of article XIII, section 1a, of the constitution of this state.

It is also the claim of appellant that the county assessor of Los Angeles County, having entered upon the assessment-roll opposite the listing of appellant's property a notation, "Exemption allowed," had no authority thereafter to cancel said notation or entry and insert in lieu thereof "No exemption."   This right involves an interpretation of section 3881 et seq. of the Political Code, which will hereafter receive attention.

The mandate of the constitution is that all property of the state except as otherwise in the constitution provided

and not exempt under the laws of the United States shall be taxed in proportion to its value, to be ascertained by law. Article XIII, section 1a, under which exemption is claimed, provides: "Any educational institution of collegiate grade, within the State of California, not conducted for profit, shall hold exempt from taxation its buildings and equipment, its grounds within which its buildings are located, not exceeding one hundred acres in area, its securities and income used exclusively for the purposes of education."

The decision of this case rests solely upon an interpretation of the language of the constitution. Section 3613, subdivision 2, of the Political Code was passed subsequent to the adoption of the constitutional amendment above set out and it can in no way limit or extend the exemption therein granted. Neither is there involved in this case a claim of exemption of an institution covering part of a collegiate course, nor claim of exemption for that part of the property of an educational institution exclusively devoted to an entire or partial collegiate course, where such institution also conducts other grades on other property.

Within the period of time to which our attention is directed, to wit, the first Monday in March, 1919, and for several months thereafter, the total number of enrolled students in attendance at appellant University was three hundred and four, of which number but thirty-seven had, before admission thereto, completed a four-year high school course or its equivalent. One hundred and seventeen pupils were enrolled in the academic department, the only requirements for admission thereto being the completion of the eighth grade course. Eighty-nine were in attendance upon the grammar grade department. Of the remaining sixty-one students two-thirds of them were taking work which required for admission not less than four years of high school work or its equivalent. Thus it will be seen that but a small fractional part of the student body was engaged in work of a collegiate grade. But it is not necessary to resort solely to the laws of ratio or relations to determine the legal status of appellant.

The language of the constitution seems clear and unambiguous as to meaning and intent and it is not at all necessary to read into it any other word or words to persuade us even against our inclination that appellant is not an

educational institution of *collegiate grade* and is, therefore, without the exemption provisions of the constitution.

Unquestionably, it was the intention of the electorate, as expressed in the language of the constitution, to exempt only educational institutions of *collegiate grade*. If it was not so the words *of collegiate grade* would have been omitted and the property of all educational institutions, both graded and mixed, if used exclusively for educational purposes and not for profit, would have come within the exemption. Had it been the intention to grant the exemption claimed undoubtedly appropriate and definite terms would have been selected to express the real purpose. It would not have been difficult to have said by the selection of words and the arrangement of sentences that the property of all educational institutions *in which a collegiate grade is maintained or conducted* shall be exempt from taxation. [1] As we read the language of the constitution exemption is granted to an institution of collegiate grade as a whole and not otherwise. Appellant University is made up or composed of a number of grades or groups of students ranking in classification below the grade defined as a *collegiate grade*. By far the largest number of enrolled students are not within the collegiate grade classification. [2] Appellant is not, therefore, and cannot be characterized as, an institution exclusively of any particular grade, but one of many grades.

We are not required to speak in defense of the policy of the law granting exemptions to an institution of collegiate grade exclusively and withholding its favors from institutions such as appellant. The fact, however, that free elemental, rudimentary, and grammar schools are quite universal throughout the state and the number of institutions of a collegiate grade offering training in technical knowledge and advanced branches of education are limited in number and can be maintained only at a high cost to the educational bodies supporting them, may have been deemed a sufficient justification for the state to encourage by way of tax exemptions the establishment of such private institutions not conducted for profit and devoted exclusively to educational work of collegiate grade. The educational benefits accruing to the state by reason of the existence of such institutions may have been regarded as outbalancing any loss

suffered by the tax exemption. Many good reasons may be advanced to justify the exemption. The language we are called upon to construe is not only statutory but also constitutional and we are not at liberty to wrest from its place a single phrase in order to give a meaning to a section of the constitution not warranted by the language employed. In such case we are bound to respect the maxim, *Ita lex scripta est.*

The subject of the section under discussion is "Educational institutions of collegiate grade." These words are the antecedent of "used exclusively for the purposes of education" and under all rules or canons of construction qualify and limit the purposes for which the buildings, equipment, and grounds may be used. [3] It is the rule of construction that where general words follow the enumeration of particular classes of persons or things, the general words will be construed as applicable only to persons or things of the same general nature or class as those enumerated. (36 Cyc. 1119; 25 R. C. L. 996, 997; 2 Lewis' Sutherland's Statutory Construction, 803, 804.) Words used in a statute are to be read in a natural and ordinary sense. (Black on Interpretation of Laws, 2d ed., pp. 142, 143.)

"If words and sentences, and parts of sentences, having no very definite signification in their ordinary use, are employed and clearly intended to have a particular and definite meaning and application, and this appears from their particular use, connection and application in the statute, that meaning and application must be accepted as proper and controlling. . . . The rule of *noscitur a sociis* is frequently applied in the construction of revenue laws." (25 R. C. L. 995, 996.)

The maxim, *expressio unius est exclusio alterius,* bears with full force upon the provisions of the language under consideration. The construction we have been forced to place upon the language is not narrow but is as broad as the language itself will permit and a failure to go further is due to a dearth of words. It is true that it is the policy of the law to favor by reasonable legislation the maintenance of institutions designed to promote education generally. [4] It is the duty of courts in construing statutes enacted for their benefit to indulge in reasonable liberality to the end that the evident purposes of such legislation may become

effective. It is equally true, on the other hand, that grants of exemption from taxation cannot be allowed unless the intention to do so is expressed in direct terms or is fairly inferable from the language of the instrument by which the right is claimed.

In concluding the discussion of this branch of the case we may add to what has already been said that we are further fortified in our conclusion by the argument made in favor of the adoption of the constitutional amendment, as prepared by its sponsors and distributed to the qualified electors, as required by law, for their enlightenment and consideration prior to the general election at which it was submitted and adopted, to wit, November 3, 1914. We quote the following from the argument of the proponent:

"Sixth. The amendment as drawn is carefully safeguarded against possible abuse by the following limitations . . .

"(a) It exempts only institutions of collegiate grade. . . .

"(c) The exempt property is limited to buildings, equipment, and grounds, with securities and income 'used exclusively for the purposes of education.' Real estate held for investment or revenue will be taxed just as at present, only the educational 'plant' actually in use being exempt from taxation. . . . "

The final question raised in this case is as to the scope of the authority of the assessor to correct an assessment at any time after the assessment has been made and prior to the sale of the property assessed for delinquent taxes under the provisions of section 3881, Political Code, as amended in 1917. Said section provides that "defects in description or defects in form or clerical omissions of the assessor, or clerical errors of the assessor, in any assessment-book, when it can be ascertained from the assessment-book, or from the assessor's maps or block books, or other papers in the assessor's office, what was intended, or what should have been assessed, may, with the written consent of the district attorney, be supplied or corrected by the assessor at any time after the assessment" and prior to the sale of said property.

Counsel have devoted themselves to a consideration of the meaning of the clause "or other papers in the assessor's office." We hardly think a decision of the question whether

or not the cards and papers resorted to by respondent are sufficient to authorize the assessor to change the assessment in the manner attempted, to be necessary for a decision of the instant case. The situation, as we understand it, was as follows: The head or manager of the Pasadena University failed to file a request for exemption from taxation, as required by law, until he had been notified by the assessor that unless he did so the University property would be assessed and required to pay its taxes. A few days before the first Monday in July, 1919, the assessor received from the head of the University an affidavit and claim for exemption. On July 7, 1919, before the rolls had passed from his custody, upon further consideration of said affidavit and claim, in connection with other information received, the assessor concluded that appellant was not entitled to exemption and on that day directed one of his deputies to cancel said exemption entry. This the deputy neglected to do. On the same day the assessor indorsed the words "No exemption" across the face of appellant's affidavit and claim for exemption, which was then on file in his office. On a card kept by the assessor enumerating the list of colleges exempt from taxation appeared a notation opposite appellant's name "Not allowed." This card was kept in the files of the office. On July 8, 1919, the assessor informed appellant by writing that its application for exemption had been disallowed. On October 1, 1919, formal application was made by the assessor, with approval of the district attorney, to the board of supervisors for permission to change the assessment-roll by placing the property of the Pasadena University thereon for taxation and for an order canceling such exemption entry. Appellant filed its objections to the proposed change on October 31, 1919. On December 9th the board ordered the correction to be made and the assessment was accordingly changed to include the omission and taxes were assessed against appellant to the amount of $1,660, which sum was subsequently paid under protest.

In an effort to establish a right to make the change or supply the omission papers admittedly not official records in a strict sense were resorted to and parol evidence was also admitted.

We think it unnecessary to enter into an extended discussion as to the admissibility of parol evidence received in

the case or as to whether or not the documents and letters admitted in evidence were of the character sanctioned by section 3881 of the Political Code, and, therefore, entitled to consideration.   [5]   We are of the opinion that, inasmuch as the property of the University was listed and described and the valuation thereof entered on the assessment-roll and the rate of the tax levy had been established by the board of supervisors, the carrying forward of the amount of tax was but a mere mathematical calculation and the amount of taxes assessed against said University was easily determinable by the application of the simple rule of mathematical computation and this was a permissible correction under section 3881, *supra.*

We are of the opinion that the auditor should have extended the tax notwithstanding such erroneous notation of exemption, and the omission to do so was subject to correction by the provisions of said section 3881, and which omission was supplied with the written consent of the district attorney.

Appellant's claim of exemption from taxation was heard within the time provided by law upon notice to appellant, who was present at the hearing and fully contested the same. It was determined as a matter of law that said University could not be brought within the grant of the constitution. We find no reversible error in the proceedings.

The judgment is affirmed.

Kerrigan, J., Lawlor, J., Wilbur, C. J., Lennon, J., Waste, J., and Myers, J., concurred.