[Civ. No. 12548. First Dist., Div. Two. Oct. 21, 1943.]

THE SAN JOAQUIN & KINGS RIVER CANAL & IRRIGATION COMPANY, INCORPORATED (a Corporation), Respondent, v. NORA M. KUNS EGENHOFF, Appellant.

Whitehurst & Logan for Appellant.

J. E. Woolley and Vincent J. McGovern for Respondent.

DOOLING, J. pro tem.—This is an appeal by defendant from a judgment quieting plaintiff's title to an easement to construct and maintain a dam on defendant's property during certain periods of each year and enjoining defendant's interference therewith.

Plaintiff is a corporation engaged in furnishing water for irrigation in the San Joaquin Valley. It maintains for this purpose a canal which passes through defendant's lands within a two hundred foot right of way. The canal runs approximately north and south. At a point on defendant's land the San Luis Creek with a flow generally from west to east crosses defendant's canal at approximately a right angle. Like most Central California streams San Luis Creek has a torrential flow during the rainy season and becomes dry or practically

so during the rainless period from spring to autumn. There is an opening in the westerly side of plaintiff's canal at the point where it is crossed by San Luis Creek. This permits the waters of the creek when it is flowing to enter the canal, and the waters of the canal when it is flowing to back westerly up the bed of the creek.

By means of a gate in the easterly bank of the canal which is opened when the creek is flowing, the creek waters pass across the canal and into the creek bed on the easterly side. When the creek is dry and water is flowing in the canal the dam which is the subject matter of this action is constructed across the creek between levees which extend westerly from the canal along the banks of the creek, so that the waters from the canal back up the creek bed westerly only to this dam. In the autumn at the time of the first rains which start the flow of water in San Luis Creek this dam is annually removed.

The attempt to maintain a balance between the flow of water in its natural course through the creek in fall and spring and a flow of water in the canal for irrigators who desire to use it in early spring and late fall has resulted at times in late spring rains running down the creek after the dam was constructed and early fall rains starting a flow in the creek while the dam was still in place and water still flowing in the canal, with occasional flooding of defendant's land and resultant friction between the parties. Plaintiff recognizes, however, that under its easement it is entitled to construct the dam only after the flood waters have ceased to flow through the creek in the spring and is bound to remove it in time to permit the first flood waters to flow through the creek in the fall, and on at least two occasions shown by the testimony plaintiff compensated once the defendant and another time her tenant for damage from flooding caused by the dam being in place when water in considerable quantity came down the creek.

In the spring of 1941 defendant prevented plaintiff from constructing the dam and the complaint in this action was filed. The complaint is in two counts, one alleging a prescriptive easement to construct and maintain the dam, and the second alleging an easement by agreement of the parties entered into in 1916 in compromise of an earlier suit brought by plaintiff to establish its right to maintain the dam. By answer and cross-complaint defendant admitted the existence of an easement in plaintiff to maintain a dam but limited to such times as the dam would not interfere with the natural

flow of water in San Luis Creek and further limited to a light earthen dam which would readily be washed away by the flood waters of the creek; and alleged the installation and operation of pumps on the dam, the placing of a twenty-four inch pipe in the base of the dam and the backing up of water behind the dam all within the prescriptive period and to defendant's damage.

Before examining in detail the grounds urged by defendant for a reversal it will simplify the discussion to notice certain rules of law in their application to certain features of the case as disclosed by the evidence. ■ The agreement of 1916 relied on by plaintiff was very general in terms, acknowledging the plaintiff's right to maintain the levees on either side of, and a dam across, San Luis Creek for the pur· pose of retaining the waters flowing through its canal, as set forth on a plat attached to the agreement. The character of the dam and the manner of its construction were in no way described. The dam as constructed under the agreement in 1916 and so long as it continued to be constructed in the same location was of gravel and light material scraped up from the creek bed and, after an opening had been made in it with shovels, it was readily washed away by the flood waters of the creek. The practical construction thus placed upon the 1916 agreement by the plaintiff itself must be held to fix the limits of the easement under the agreement. "Where the grant is general as to the extent of the burden to be imposed on the servient tenement, an exercise of the right, with the acquiescence and consent of both parties, in a particular course or manner, fixes the right and limits it to that particular course or manner." (9 Cal.Jur. 951; *Winslow* v. *City of Vallejo*, 148 Cal. 723 [84 P. 191, 113 Am.St.Rep. 349, 7 Ann.Cas. 851, 5 L.R.A.N.S. 851].)

The testimony shows that about 1926 plaintiff moved the location of the dam some 150 feet downstream. The trial court made no finding as to whether or not defendant acquiesced in this changed location and we deem it immaterial on this appeal. ■ If defendant acquiesced the plaintiff acquired the same rights, and no others, in the new location, the same rights simply being transferred to the new location. (*Vargas* v. *Maderos*, 191 Cal. 1 [214 P. 849]; *Wallace Ranch W. Co.* v. *Foothill D. Co.*, 5 Cal.2d 103, 116 [53 P.2d 929].) Any additional rights, if thereafter acquired, must be by plaintiff's adverse user for the statutory period. On the other hand if the change of location was not consented to by

defendant then the extent of the easement at the new location would be measured entirely by the extent and character of plaintiff's adverse user for the statutory period. (*Moore* v. *California Oregon Power Co.*, 22 Cal.2d 725, 735 [140 P.2d 798]; *North Fork Water Co.* v. *Edwards*, 121 Cal. 662, 666 [54 P. 69]; *Anderson* v. *Southern Cal. Edison Co.*, 77 Cal. App. 328, 337 [246 P. 559].) Since the judgment quieted plaintiff's title to the easement at the present location any greater rights than those exercised at the old location must in either event depend upon adverse user over a five year period.

The evidence showed without contradiction that within the five year period of the statute of limitations the size of the dam had been greatly increased from a width across its top of from three to five feet, to a width across its top of approximately eighteen feet. The trial court found in this connection:

"That it is true that in the year 1936 and prior thereto, the said dam across San Luis Creek was smaller than the dam constructed across said Creek in the year 1942; that in the year 1936 and prior thereto said dam was constructed to such height and slope as was reasonably required to hold back the water of the Outside Canal which enter said Creek, and the Court finds that such smaller dam is reasonably sufficient to block off the water of the Outside Canal entering said Creek, and that it is unnecessary for the plaintiff to build the larger dam which it built in the year 1942; but the Court further finds that the top width of said dam must be of a width reasonably necessary to permit the installation of said pumping equipment."

We shall discuss the portion of this finding referring to pumping equipment at a later portion of this opinion. What is to be noticed now is the finding, which was followed by the decree, that the plaintiff's easement was limited to a dam of such size as is reasonably required to hold back the waters of the canal, that being the extent and manner of the usage of the easement shown by the evidence to a time within the prescriptive period.

The evidence further showed that originally the dam had been constructed of loose sand and gravel scraped up from the bed of the creek and that in the fall when it was necessary to remove the dam to permit the first flow of the creek to pass through all that was necessary was for two men to

dig an opening in the center of this dam with picks and shovels and the water when it started to flow through would wash away the dam with some assistance from the workmen in breaking down the sides. At some time not clearly fixed by the evidence the material used in the construction of the dam was changed by the addition of clayey material from the banks of the creek and the evidence showed without contradiction that this material so changed the character of the dam that it could not be removed so as to permit the autumn flow of the creek to pass through except by the use of a bulldozer and charges of dynamite. ▇ The plaintiff failed to prove that the construction of the dam of this firmer material had continued for the prescriptive period and the trial court made no finding on defendant's qualified denial and allegation that the easement was limited to the construction of "only a light and narrow earthen structure for such dam so that any portions not removed would readily wash away and permit the full natural flow of said creek to continue down the channel." The judgment likewise fails to specify the material of which the dam should be constructed. In this the trial court was in error. As reiterated in *Moore v. California Oregon Power Co., supra,* 22 Cal.2d 725, 735, "prescriptive rights are stricti juris and should not be extended beyond the actual user." ▇ It seems obvious that the burden of the easement was extended by the change of materials necessitating the use of power driven machinery and dynamite to remove the dam, instead of shovels and picks as theretofore, with the increased delay and hazard of flooding attendant thereon. The hazard of flooding is further increased by the use of materials which the waters of the creek could not themselves wash away once an opening had been made, as was the case with the lighter material theretofore used. The plaintiff could not thus without the consent of defendant materially increase the burden of the easement which it had theretofore acquired and enjoyed. (9 Cal.Jur. 952 and cases cited in notes 6 and 7.)

The trial court further found and decreed that all that was reasonably necessary to permit the flow of the creek through the dam was to make an opening therein measuring at least forty feet through the base thereof. The evidence as we have heretofore pointed out failed to show the construction of a dam of materials which would not readily be washed away by the waters of the creek over the prescriptive period

necessary to give the plaintiff a right to construct it otherwise. If the dam is constructed of such lighter material the evidence shows without contradiction that the waters of the creek will themselves wash the materials of the dam away substantially to the width of their natural flow. No right, prescriptive or otherwise, was shown in plaintiff to maintain any portion of the dam through the period of normal flow of the creek which if constructed of material from the creek bed would be naturally washed away by the flow of its waters.

The trial court found "that on numerous occasions said defendant . . . complained to plaintiff that water, during the late spring and summer, after said dam had been installed, was accumulating above said dam from seepage and demanded of plaintiff that said accumulated water be removed; that in order to comply with said demands of defendant, plaintiff has since the year 1936 installed two pumps, operated two gasoline motors, on the upper side of said dam and by means thereof has pumped the water which has accumulated from seepage above said dam over said dam to the lower side thereof."

It is claimed that this finding insofar as it finds that the pumps were installed at defendant's request is not supported by the evidence. The witness Mott however testified that due to wetter years and increased irrigation on lands draining into the creek above the dam the creek since 1935 had run some water through the summer, that he thought they first put the pumps in in 1935 and that "this new irrigation and wetter years caused water to accumulate in the creek channel above the dam, about which condition Mrs. Egenhoff complained, and we (the canal company) put pumps in there to keep the water down and put it over the levee." This sufficiently supports the finding in the respect complained of, and justifies the conclusion of the trial court that the burden of the easement had been enlarged in this respect with defendant's consent. (16 Cal.Jur. 286-288.)

Defendant also complains of the trial court's finding that the placing of the twenty-four inch pipe in the bottom of the dam did not materially increase the burden of the easement. The purpose of the pipe is to drain off the late spring flow after the dam is put in and before water starts flowing in the canal. It is equipped with a valve which can be closed before the canal water backs up to the dam. The evidence shows that on one occasion the valve was not closed before the

canal water was turned in and some of this water flowed through the pipe to the upstream side of the dam causing flooding of defendant's land. We are satisfied that, despite this incident which was due to the carelessness of plaintiff's employees, the trial court's conclusion is correct. Properly operated the installation and use of the pipe through the dam will not increase the burden of the easement.

Defendant also attacks a finding that plaintiff is entitled to allow waters to accumulate between the point of location of the present dam and the old dam, subject to the duty to operate the two pumps. The finding is supported by evidence of the present size of the pond above the dam and the testimony of Alwin Fittje "that there is no more pond above the dam than there has been the past ten years."

Plaintiff points to a finding: "That the operation and maintenance of said dam and said levees are necessary in the operation of said Outside Canal, and without the use of said dam and levees, and each of them, said plaintiff would not be able to operate said canal, as aforesaid, and would be unable to distribute water to the public without great loss of water and property damage from overflow, and both the public and plaintiff will suffer great and irreparable damage if plaintiff is not able to operate and maintain said dam and levees and each of them." From this plaintiff argues that this amounts to a finding that a public use in the dam as described in the judgment has intervened and the defendant is thereby remitted to an action for damages only, by way of reverse condemnation. (*Peabody* v. *City of Vallejo*, 2 Cal.2d 351, 378 [40 P.2d 486]; *Miller & Lux* v. *Enterprise C. etc. Co.*, 169 Cal. 415, 424 [147 P. 569].)

This finding, however, must be read in connection with the other finding hereinabove quoted, that the smaller dam as constructed in 1936 and theretofore "is reasonably sufficient." Reading the two findings together it is plain that the court did not find that a dam constructed of the lighter material formerly used would not be entirely adequate for all purposes. The court simply failed, as above noticed, to make any finding on that material issue.

Finally defendant argues that the dam constitutes a public nuisance especially injurious to defendant and for that reason should be enjoined. This is based on two factors: 1. The flooding of the county road on the occasions when the dam was allowed to remain in place during a period of flood waters

in the creek, and 2. That the maintenance of the dam without the approval of the State Department of Public Works is a violation of Statutes 1929, chapter 766 (Stats. 1929 p. 1505; Deering's Gen. Laws, 1937, Act 1950) providing for the supervision of dams by the Department of Public Works.

The flooding of the highways can only occur from the maintenance of the dam if plaintiff leaves the dam in during a period of flood water in the creek. Under its easement it has no right to do this, and the maintenance of the dam in strict accordance with its rights, which includes the obligation to remove it in periods of flood, can under no possibility result in a flooding of any public highway.

The statute relied upon defines the word "dam" to mean (sec. 2 Stats. 1929 p. 1505 as amended by Stats. 1933 p. 2148) "any artificial barrier . . . across a stream channel, watercourse or natural drainage area, which does or may impound or divert water, which is or will be either twenty-five feet or more in height from natural streambed to crest of spillway, or which has or will have an impounding capacity of fifty acre feet or more; . . ."

It is argued that the dam here under consideration will, if allowed to remain in place during flood periods, impound more than fifty acre feet of water in the creek and since it "may" do so it comes within the terms of the act. The court found that "said dam is not used for the purpose of impounding the waters of San Luis Creek, but for the purpose of preventing the water from the Outside Canal from backing up said Creek; that any water impounded above the dam is either water that has seeped through said dam from the Outside Canal or is water that has collected above the dam from seepage water entering said Creek, and said quantity in either case is small and is removed by operation of said pumps."

It is clear that the maintenance of the dam in accordance with the strict terms of the easement, only during the dry period from spring to fall, neither "does or may impound or divert water" amounting to fifty acre feet, and if a violation of the statute (a point which we find it unnecessary to decide), is at most a technical and not a substantial violation thereof. In any event the exercise of the easement strictly according to its terms will result in no injury to defendant not within the contemplation of the

parties in the creation of the easement and in no injury to defendant of the character sought to be prevented by the statute. If a technical public nuisance the public authorities alone may intervene since the maintenance of the dam in compliance with the limitations of the easement will not result in special injury to defendant. (Sec. 3493, Civ. Code; *Frost* v. *City of Los Angeles,* 181 Cal. 22 [183 P. 342, 6 A.L.R. 468].)

It seems proper to add that if the parties on a second trial produce evidence to support a more specific finding as to the actual dimensions of the dam as theretofore constructed and as necessary to reasonably accomplish the purpose of the easement it would be better practice, and a discouragement to future friction and possible litigation, to set out definitely in the findings and decree the permissible dimensions of the dam which plaintiff is entitled annually to construct and maintain.

For the errors herein discussed the judgment is reversed.

Nourse, P. J., and Spence, J., concurred.