[Civ. No. 22657.   Second Dist., Div. Two.   Jan. 23, 1958.]

MEMORIAL HILLS ASSOCIATION (a Corporation), Appellant, v. SEQUOIA INVESTMENT CORPORATION (a Corporation), Respondent.

William P. Mealey for Appellant.

Goodstein, Moffit & Rosen and Donald J. Dunne for Respondent.

KINCAID, J. pro tem.*—Plaintiff appeals from a judgment in its action to set aside a deed to the State of California in 1953 of certain property sold for unpaid taxes assessed in 1947, and to set aside the resulting sale of the property to defendant by the state in 1955. Plaintiff's only charge of illegality in the deed and the sale is the allegation that the property was and is being held and maintained for cemetery purposes and therefore is exempt from taxation by virtue of the provisions of section 1(b) of article XIII of the California Constitution.[1]

Plaintiff, a nonprofit corporation, was organized in 1932 under the name of Rainbow Division Properties Association. In 1935 its name was changed to Memorial Hills Association by charter amendment. Its purposes, as expressed in its charter, comply with the provisions of section 8252, Health

---

*Assigned by Chairman of Judicial Council.

[1]"All property used or held exclusively for the burial or other permanent deposit of the human dead or for the care, maintenance or upkeep of such property or such dead, except as used or held for profit, shall be free from taxation and local assessment."

and Safety Code, setting forth the requirements for the transaction of cemetery business.

In 1932 plaintiff acquired certain property located in an unincorporated part of Los Angeles County, of which a parcel of approximately five acres is the subject property. As consideration the seller Maddox received 37 memberships in the association which he then transferred to his daughter, wife of Peter Gadd. From 1932 until 1948 Mrs. Gadd appears to have been the only member of the association. She transferred one membership to her son, Harry M Gadd, in 1948 On May 3, 1956, after the commencement of this action, she assigned one membership to William P. Mealey, attorney of record for plaintiff herein, and one membership to George G. Moore. The original officers of the association are deceased and no successors appear to have replaced them except Peter Gadd who appears to have acted as de facto secretary.

On June 13, 1932, the plaintiff executed and recorded a Declaration of Intention to Dedicate the subject and adjacent property for cemetery purposes, which document included a plat map purporting to show the location of proposed roadways, building sites and burial plots. On May 19, 1932, in accordance with the applicable ordinance in effect at that time, plaintiff filed an application with the Board of Supervisors of Los Angeles County for a permit to establish and maintain a cemetery upon the property, and on June 13, 1932, such a permit was issued to plaintiff. On December 17, 1932, plaintiff filed for record in the office of the county recorder a written declaration of dedication of cemetery lands describing the subject property. On December 11, 1933, the board revoked the June 13th permit and no such permit has since been applied for or issued. No burials were made in the property prior to such revocation. A county ordinance prohibits the operation or maintenance of a cemetery in unincorporated territory without a permit from the board of supervisors.

The city of Monterey Park extended its limits to include the subject property. An ordinance of the city entirely prohibits the burial of human dead within its borders.

In addition to the foregoing facts, the trial court found that since the revocation of said permit the plaintiff has maintained fences along the outer boundaries of the property with signs posted stating that said property was cemetery property and prohibiting any trespass thereon, and has also maintained concrete monuments at each tier and block designating the

number of each tier and block; that during the year 1934 the human remains of eight persons were buried in the entire property, only one of which was buried within the boundaries of the subject property; that said remains consisted of ashes of cremated persons and that no markers were placed to identify the exact location of said burial; that no lawns or plantings were made on any part of the property except for a few shrubs and that weeds were permitted to grow over the entire property; that no endowment care fund was established or maintained by plaintiff; that there never have been any sales or offers to sell burial plots and no portion of the property had ever been prepared for interments, except for the burial of the eight remains as above set forth; that for many years prior to 1947 the plaintiff had no funds and kept no books or fiscal records; that prior to the tax year 1947 Peter Gadd had paid the taxes on the subject property, either before or after delinquency, and without formal protest as to the legality of the assessment; and that after the sale to the state and prior to the deed to the state, Peter Gadd instituted proceedings to redeem the subject property from said tax sale under a five-year redemption plan but abandoned such partial payment redemption plan prior to the deed to the state by failure to make the required payments. There is substantial evidence to support all of the foregoing findings of fact.

As an ultimate finding of fact the court found: "That the property the subject to this action, was not, in 1947 or for many years prior thereto, or from 1947 to the filing of this action, used or held exclusively for the burial or other permanent deposit of the human dead" and as a conclusion of law therefrom found that at the time of the assessment and levy, the property was not exempt from taxation under the provisions of section 1(b) of article XIII of the Constitution and that the taxes for which the sale was made were properly and legally assessed and levied.

■■■ Plaintiff attacks the ultimate finding that the subject property was not "used or held exclusively for the burial or other permanent deposit of the human dead" on the ground of insufficiency of the evidence. In support of its position it relies upon the testimony of Peter Gadd to the effect that the property has been exclusively held for cemetery and interment purposes and for no other purpose. Giving this testimony its utmost weight, it merely creates a conflict in the evidence. Opposed to it is the evidence, largely physical, of

nonuser; failure to improve the grounds, failure to make any attempt to sell or promote the sale of lots and generally to allow the subject property to lie completely dormant from the time of its acquisition in 1932 until the assessment in 1947, and thereafter until the commencement of this action. All these factors negative the self-serving declarations of Peter Gadd as to the purpose for which the property was being held. Certainly there is little credible evidence of its being used for the purpose claimed.

By stipulation of the parties the trial court personally viewed the subject property.　　When a trial judge views the property involved in an action his observations on such a tour become evidence in the case (*Safeway Stores, Inc.* v. *City Council of San Mateo*, 86 Cal.App.2d 277, 284 [194 P.2d 720]), and that which is then seen may then be used alone or with other evidence in support of the findings. (*Wheeler* v. *Gregg*, 90 Cal.App.2d 348 [203 P.2d 37].)

　　All conflicts must be resolved in favor of the prevailing party and the evidence viewed in the light most favorable to it (*O'Banion* v. *Borba*, 32 Cal.2d 145, 147-148 [195 P.2d 10] ; *Estate of Jamison*, 41 Cal.2d 1, 13 [256 P.2d 984]), and it follows that the evidence is amply sufficient to sustain the ultimate finding that the subject property was not being used or held exclusively for burial purposes.

　　Constitutional provisions exempting specified classes of property from taxation are to be strictly construed.　The constitutional exemption now before us relates only to "property used or held exclusively for the burial　. of the human dead." This exemption is narrow in its terms and must be so construed. It was said in *Pasadena University* v. *Los Angeles County*, 190 Cal. 786, 790-791 [214 P. 868] : "The language we are called upon to construe is not only statutory but also constitutional and we are not at liberty to wrest from its place a single phrase in order to give a meaning to a section of the constitution not warranted by the language employed . . . grants of exemption from taxation cannot be allowed unless the intention to do so is expressed in direct terms or is fairly inferable from the language of the instrument by which the right is claimed." This principle was specifically applied to section 1b of article XIII of the Constitution in *Cypress Lawn Cemetery Assn.* v. *City & County of San Francisco*, 211 Cal. 387, 390 [295 P. 813]. There the cemetery association had invested in a hotel the trust funds held for the perpetual care and maintenance of the graves.

The earnings from the hotel were used for such maintenance. The Supreme Court held the hotel did not fall within the constitutional exemption from taxation.

Mere ownership of land which has been "dedicated" for cemetery purposes does not, of itself, exempt the land from taxation. The constitutional provision requires the concurrent ownership and "use" of such land for burial of the human dead *or* the "holding" of such land *exclusively* for such burial. The "holding" must be active, factual and real, not merely passive, as in the instant case where the property lay virtually dormant for 23 years prior to the tax sale.

The applicable terms were succinctly defined in *Pomona Cemetery Assn.* v. *Board of Supervisors,* 49 Cal.App.2d 626, 632 [122 P.2d 327], as follows: "The word 'used' may well refer to the property employed as a burial place for the human dead, whereas 'held' refers to property that has been *prepared, made available, maintained* and *offered for sale for burial purposes.*" (Emphasis added.) In the present case, the property has not even been maintained for burial purposes, much less prepared, made available and offered for sale.

In further support of its findings that the property was not being used or held exclusively for burial purposes, the court properly considered the ordinances of the county prohibiting the operation or maintenance of a cemetery in unincorporated territory without a permit from the board of supervisors and of the city of Monterey Park prohibiting the burial of human dead within its borders. That such ordinances are valid was determined in *Odd Fellows' Cemetery Assn.* v. *City & County of San Francisco,* 140 Cal. 226 [73 P. 987], where the court upheld an ordinance prohibiting further burials in already established cemeteries. The validity of such ordinances was reaffirmed in *Laurel Hill Cemetery* v. *City & County of San Francisco,* 152 Cal. 464, 467 [93 P. 70, 14 Ann.Cas. 1080, 27 L.R.A.N.S. 260], affirmed in 216 U.S. 358 [30 S.Ct. 301, 54 L.Ed. 515]. (See also 10 Cal.Jur.2d, Cemeteries, §§ 27-28, pp. 25-26.)

To hold that the subject property is exempt from taxation under the constitutional provision cited would open the door wide to obvious abuses. Land speculators desiring to hold property over long periods awaiting approaching developments might find a comparatively easy method of assuring tax-free profits. By transferring title to a nonprofit cemetery córporation, complying with the statutory provisions for dedi-

cating the land for cemetery purposes, including the filing of surveys and maps, the land could then be allowed to lie dormant. These steps might be taken even in the face of an ordinance prohibiting the operation or maintenance of a cemetery without a permit or prohibiting the burial of human dead within the borders of the municipality in which the land was situated. No bodies need ever be buried there, no cultivation or planting for cemetery use need be done, and no sales or offers to sell burial plots need be initiated. At a later time deemed appropriate, steps could be taken to return the property to private or commercial use by instituting proceedings under the provisions of section 8580 of the Health and Safety Code. This might be accomplished by petitioning the court to remove the dedication for cemetery purposes on a showing that no interments were made or all have been removed from the property and that it is not being used for interment of human remains. Such was not the intendment of the People of California when they adopted section 1(b) of article XIII of the Constitution.

Plaintiff relies strongly on the case of *People* ex rel. *Oak Hill Cemetery Assn.* v. *Pratt* decided by the New York Court of Appeals in 1891 (129 N.Y. 68, 74 [29 N.E. 7]). An 1847 statute of the state of New York provided for exemption from taxation of property acquired and owned by a corporation to be held and occupied exclusively as a cemetery for the burial of the dead. The court held that so long as the corporation held the land exclusively for cemetery purposes, it, as well as all its corporate property, was exempt from taxation. Our constitutional provision for exemption is much narrower than the New York statute so construed and the mere holding of land exclusively for cemetery purposes would fail to qualify it for tax exemption thereunder.

Defendant alleged as a defense and the court found as a fact that more than one year elapsed between the date of recording the deed to the state and the filing of this action. It was therefore concluded as a matter of law that the cause of action was barred by sections 175 and 3521 of the Revenue and Taxation Code. Plaintiff urges that such a finding nullifies the purpose of section 1(b), article XIII. It contends that if the property in question is exempt, the tax levy and all following proceedings including the tax sale are a nullity and the Legislature by a statute of limitations cannot make valid that which is void.

In view of our conclusion that the property did not fall

within the constitutional exemption, we find it unnecessary to further consider this subject.

The judgment is affirmed.

Fox, Acting P. J., and Ashburn, J., concurred.

A petition for a rehearing was denied February 18, 1958, and appellant's petition for a hearing by the Supreme Court was denied March 19, 1958.