[Civ. No. 22628.   Second Dist., Div. Two.   Mar. 6, 1958.]

GEORGE STANLEY GAYTON et al., Respondents, v. JOHN LEBEDINA et al., Appellants.

Roy J. Brown for Appellants.

Houser & Beam and Everett Houser for Respondents.

KINCAID, J. pro tem.*—This action was instituted by plaintiffs-respondents, hereinafter called "Gaytons," against defendants-appellants, "Lebedinas," to enjoin the obstruction of a driveway by a steel fence and gate, for a mandatory injunction requiring removal of such obstruction and for damages therefor. The complaint is in two causes of action; the first alleging a recorded easement, and the second, an easement by prescription based on open, notorious and adverse usage of the driveway by plaintiffs and their predecessors for more than 12 years past and without any fence, gate or other obstruction. The defendants answered and filed a cross-complaint wherein they sought a declaration of the rights of the parties with respect to said easement, and damages for the improper use thereof by plaintiffs. A judgment followed perpetually enjoining defendants from interfering with the free use by the plaintiffs or their successors in interest of the driveway, from maintaining a gate or obstruction of any description across it and requiring that a gate theretofore established across it by defendants be removed. The judgment further provided that plaintiffs recover from defendants the sum of $250 damages, that defendants recover a like sum from the plaintiffs as damages and plaintiffs and their successors in interest be required at their sole expense to maintain the driveway in a reasonable state of repair.

While the appeal is taken from the judgment as a whole, two principal grounds are asserted by defendants as the basis for a reversal. They are: (1) that the present and proposed use of the driveway by plaintiffs is in excess of the rights created by the easement; (2) that the present and proposed use of the driveway by plaintiffs amounts to an improper enlargement of the dominant estate in that the entire plaintiff parcel of land will be served thereby rather than the area south of the line of a wooden fence formerly found on the property. No serious complaint seems to be made by defendants as to the provisions of the judgment requiring the gate and post to be

*Assigned by Chairman of Judicial Council.

removed, this already having been done, or the requirement that plaintiffs must maintain the driveway in a reasonable state of repair. Damages due each party have already been satisfied of record. The only challenge as to that portion of the findings and judgment relating to plaintiffs and their predecessors having acquired an easement by prescription is limited to a contention that no prescriptive right has accrued to use the driveway to any greater extent than it was used prior to the construction of the new building by plaintiffs.

The evidence discloses that the Gaytons own a deep lot (90 feet by 284 feet) facing on East Fourth Street in a thickly populated area of Long Beach. The Lebedinas own a lot (60 feet by 130 feet) sticking out at right angles to Gaytons' lot, like a thumb, and fronting on another public street called Carroll Park East. The driveway in question is over the south 8 feet of the Lebedina lot and serves to connect Gaytons' lot with Carroll Park East.

Originally all land mentioned was under common ownership. The common owner deeded to the Lebedinas' predecessor in interest on June 7, 1944, reserving the driveway easement.[1] The easement was preserved in full force by subsequent deeds to the Gaytons and to the Lebedinas.

The evidence covered a period of many years. In 1908, there was a two-story house on the Fourth Street end of the lot, and a barn in the rear. A cottage was then moved in behind the main house, and a garage built facing Fourth Street. Between 1921 and 1926 the apartments now owned by the Lebedinas were built, also five garages in the rear of the apartments, and the concrete driveway in question and a row of nine brick garages on what is now the Gayton property. Until the Lebedinas erected one, there was never any gate across the driveway.

A total of 13 vehicles were accommodated under cover on the rear portion of the Gayton land. In addition some cars or trucks stood out in the open. The nine garages and barn thereon were used by motor vehicles. A transfer man used the space for a half-ton truck, a 1½-ton truck, a 2-ton truck and two vans at different times. This usage covered the period 1944 to 1956. The driveway was used for both ingress

[1]On June 7, 1944, Mrs. Beck, as executrix under the will of Clara V. Porter, conveyed the property now owned by defendants to a Mrs. Ida M. Ashley, defendants' predecessor in interest, ''reserving to the Estate of Clara V. Porter, Deceased, and the Heirs, Devisees, Successors and Assigns of said Clara V. Porter, an easement over the South Eight (8) Feet of said property for a driveway.''

and egress. Vehicles could enter the garage facing on Fourth Street but there was no vehicular traffic from Fourth Street to the nine garages, the four-space barn or open parking space in the rear because the front improvements were separated from the back yard by an old wooden fence with a gate for pedestrians.

The concrete driveway served and serves a dual purpose, the portion from Carroll Park East extending to the rear of the Lebedinas' apartment house being used by the Lebedinas and three of their tenants to drive cars to and from the garages on the rear of the Lebedina property. The portion used by the Lebedinas and the straight extension of the driveway past the Lebedina garages is also for the benefit of the Gaytons and under the plans for the new improvements on the Gayton property will be used exclusively as an exit from the Gayton property.

In April 1956 the Gaytons bought their property, cleared the lot and prepared to erect a 14-unit own-your-own apartment building with 11 carports or parking spaces in place of the 13-car covered garage-barn buildings and open parking space. The design provides that vehicles will all enter from Fourth Street and circulate out to Carroll Park East over the driveway. At the request of the parties the trial judge personally visited and inspected the involved premises during the course of the trial.

█ The evidence is amply sufficient to meet and overcome the Lebedinas' contention that the present use of the driveway by the plaintiffs is in excess of the rights created by the easement. As noted the easement was created at a time when both the Gayton and the Lebedina properties were held under common ownership. The deed reserved to the estate of such common owner the south 8 feet of the property then conveyed to the predecessors of defendants to be used for a driveway. This had the effect of reserving it for the use of the entire property so held without regard for any fence which may have divided it in any particular.

The judgment in this regard is further supported by the evidence showing that through the years this driveway over the easement served the present Gayton property by the ingress and egress of automobiles and trucks to the nine brick garages, the barn and the open parking spaces.

Each party cites and relies on the rule that in case of a grant which imposes a burden on the servient tenement in general terms, the particular course or manner of use is fixed

by the manner of exercise of the granted right, with the acquiescence and consent of both parties. (17 Cal.Jur.2d, p. 127, Easements, § 23; *Winslow* v. *City of Vallejo*, 148 Cal. 723 [84 P. 191, 113 Am.St.Rep. 349, 7 Ann.Cas. 851, 5 L.R.A.N.S. 851]; *Kern Island etc. Co.* v. *Bakersfield*, 151 Cal 403 [90 P. 1052]; *Colegrove Water Co.* v. *City of Hollywood*, 151 Cal. 425 [90 P. 1053, 13 L.R.A.N.S. 904]; *Signorelli* v. *Edwards*, 120 Cal.App. 614 [8 P.2d 194]; *San Joaquin & Kings etc. Co.* v. *Egenhoff*, 61 Cal.App.2d 82 [141 P.2d 939].)

With the consent and through the acquiescence of the parties and their predecessors in interest some 13 or more automobiles and trucks have used the easement to and from the Gayton property for a period of some 20 years. For all this time the driveway was utilized without protest, obstruction, gate or hindrance. It was only when plaintiffs commenced operations directed toward the construction of the 14-unit apartment building on their premises that defendants registered their objections. These were followed by erection of the fence and gate across the driveway.

While it is understandable that defendants were annoyed and disturbed during the period of construction this was of a temporary nature and was fully considered by the court in the award of damages to them. With completion of the apartment the noise and confusion of building operations will end. Whereas before there were 13 covered parking spaces in addition to open-air parking served by the driveway, now there are but 11 with no open spaces. Before there was two-way traffic whereas now the easement is used for one-way egress only. Examination of the exhibits, when taken with the testimony, demonstrates that there is no substantial change in the location where motor vehicles will be kept. Motor vehicles are still relegated to the side and rear of the lot much as they were before.

The old wooden fence is gone but it never played any real part in the use of the property by the owners or their successors insofar as vehicular traffic was concerned. From the evidence the trial judge was fully justified in concluding that the existence or location of this fence was consistent with and had no bearing upon the use found to have been made of the driveway in behalf of the entire property for which the original reservation was made.

For the reasons stated the further contention of defendants that the present and proposed use of the driveway by plaintiffs amounts to an improper enlargement of the dominant

estate cannot be sustained. The court found, and the evidence sustains the finding, to the contrary. In addition to the oral and documentary evidence considered, the trial judge personally viewed the driveway and the surrounding properties.

When a trial judge views the property involved in an action his observations on such tour become evidence in the case (*Safeway Stores* v. *City Council, San Mateo*, 86 Cal.App. 2d 277, 284 [194 P.2d 720]), and that which is then seen may be used alone or with other evidence in support of the findings. (*Wheeler* v. *Gregg*, 90 Cal.App.2d 348 [203 P.2d 37]; see *Memorial Hills Assn.* v. *Sequoia Investment Corp.*, 157 Cal.App.2d 119 [320 P.2d 567].)

Defendants additionally complain that the injunction as presently worded restraining them from interfering with the free use by plaintiffs or their successors of the driveway presently constructed over the 8 feet covered by the easement is too broad and should be referable to the conditions now existent. The answer to this seems to be that if, in the future, conditions may change so that the use made of the easement becomes excessive and unreasonable, appropriate proceedings may be instituted to vacate or modify the injunctive decree. (*Sontag Chain Stores Co.* v. *Superior Court*, 18 Cal. 2d 92 [113 P.2d 689]; *Woods* v. *Corsey*, 89 Cal.App.2d 105 [200 P.2d 208].)

The judgment is affirmed.

Fox, P. J., and Ashburn, J., concurred.