**UNITED STATES of America, Plaintiff,**

**v.**

**Harry S. CROSS, Jr., and Cowan Concrete Products, Inc., a corporation, Defendants.**

**Civ. A. No. C–3063.**

United States District Court, D. Colorado.

March 7, 1972.

Charles W. Johnson, Asst. U. S. Atty., Denver, Colo., for plaintiff.

Willis K. Kulp, Greeley, Colo., for defendants.

### MEMORANDUM OPINION AND ORDER

CHILSON, District Judge.

This matter is before the Court on motions for summary judgment by both plaintiff and defendant. The parties

have submitted an agreed statement of facts and supporting exhibits from which it appears there are no genuine issues of material fact for determination and that disposition by summary judgment is proper.

Briefs have been filed in support of and in opposition to the motions, and the Court has heard oral argument and is duly advised.

By this action, plaintiff seeks a mandatory injunction requiring defendant Cross to remove that portion of a partially constructed home which is located under the plaintiff's power transmission line. Upon the plaintiff's motion, the complaint was dismissed as to defendant, Cowan Concrete Products, Inc.

The agreed statement of facts discloses the following material facts which are determinative of the issues before the Court.

In 1938, the then owners of the SE¼ of the SW¼ and the SW¼ of the SE¼ of Section 9 Township 5N, Range 66W of the 6 PM granted to the plaintiff an easement over the "east portion" thereof . . . "to construct, maintain and operate a 115Kv. transmission line . . .". The easement was duly recorded. The transmission line was constructed in 1939, has been and is now maintained in the same location and consists of three conductor lines with two overhead ground wires carried by two-pole structures with cross arms.

Approximately fifteen years after the construction of the power line, portions of the land adjacent to and under the transmission line were subdivided as Hopkins Heights and annexed to the City of Greeley.

Beginning in the year 1950 and intermittently since that time, the owners of land located adjacent to and under the transmission line have constructed various structures and improvements thereon, portions of which are located under one or more of the three conductor lines.

The structures and improvements in existence prior to September 1970 consist of ten residences, one filling station, parking lots for a shopping center, a lumber company, a repair shop, an animal hospital, a concrete incinerator and miscellaneous fences, trees, shrubs, and lawns.

In September 1970, the defendant purchased Lot 4, Block 1, Hopkins Heights, City of Greeley, which is situate adjacent to and partially under the plaintiff's line. The defendant was aware of the plaintiff's easement and the structures and improvements then existing adjacent to and under the transmission line.

The defendant was in the home construction business and acquired the property to build a residence thereon. He applied for and in November 1970, received a building permit from the City of Greeley and in the same month, started construction by excavating for the foundation. The house, when completed, was to be located in part on land adjacent to the transmission line and in part under one conductor wire of the transmission line.

Shortly after excavating for the foundation, an employee of the Bureau of Reclamation, an agency of the plaintiff, informed defendant that he should file a Government form with the Bureau of Reclamation to determine whether it had any objection to the construction of the residence.

The defendant thereupon obtained an opinion from an attorney, Mr. William R. Kelly, who, after examining the abstract of title to the defendant's property, advised the defendant of plaintiff's easement and that his rights to use the property were limited only to such use as is consistent with and does not interfere unreasonably with the maintenance of the transmission line, and that to make such use, no permission need be asked of the easement grantee, the United States.

The defendant then completed the form and submitted it along with Mr. Kelly's opinion to the Bureau of Reclamation on December 23, 1970. On Janu-

ary 5, 1971, the defendant received a letter from a Mr. Stokes, Project Manager for the Bureau of Reclamation, informing him that the Bureau did not concur with Mr. Kelly's opinion and that he was referring the matter to the Denver Regional Office.

On January 15, 1971, the defendant received another letter from Mr. Stokes, informing him that the construction of a house under the transmission line was objected to and that if he proceeded with construction, legal action would be commenced.

The defendant then consulted another attorney (Mr. Telep) who advised him that in his opinion, the Bureau of Reclamation could not prevent the defendant's proposed construction.

On April 3, 1971, the defendant proceeded with the construction of the house and on April 24, 1971, the defendant was served with process in this action and as a result, he has halted further construction.

The uses of the land under the transmission line do not prevent the plaintiff from operating and maintaining the line, but such uses have increased the difficulty and cost of maintenance over what it would be if no such uses were made of the land under the line. Yet, at no time since these uses were initiated in the year 1950 until January 1971, did the plaintiff's object to such uses as an unlawful interference with its easement rights, or that such uses were incompatible or inconsistent with or constituted an unreasonable interference with the plaintiff's rights under the easement.

On the contrary, when one Rothman, who built a filling station under the transmission line in 1961, (Building L Exhibit 16) wrote plaintiff and asked whether it had objection to the construction of the filling station in that location, was informed by the plaintiff it had none.

These facts, together with the fact that the easement grant contains no provision prohibiting the uses made by the owners of the servient estate, leads to the conclusion that both the owners of the servient estate and the plaintiff as the owner of the dominant estate construed plaintiff's easement as not precluding the use of the servient estate for residential purposes.

The fact that the uses by the owners of the servient estate have increased the cost of maintenance is not conclusive in determining whether or not the plaintiff is entitled to the injunctive relief it asks.

The applicable law is well stated in 28 C.J.S. Easements § 91a, p. 770, as follows:

"Unless he expressly agrees to the contrary, the owner of the servient estate may use his property in any manner and for any purpose consistent with the enjoyment of the easement, and the owner of the dominant estate cannot interfere with this use. Subject to the easement, control of the servient owner extends indefinitely upward from the surface and downward ad inferna. Furthermore, it is not necessary that the grantor should expressly reserve any right which he may exercise consistently with a fair enjoyment of the grant; and the exercise of any such right cannot be complained of by the grantee who can claim no other limitation on the rights of the grantor, but such as are expressed in the grant, or necessarily implied in the right of reasonable enjoyment. So the right to make any use of the servient soil when it does not interfere with the easement cannot be abridged by words used in the granting clause, unless the intention to limit the estate is clearly expressed or is a necessary implication from the words used. Since, however, the rights of the owner of the easement are paramount, to the extent of the grant, to those of the owner of the soil, the latter cannot make any use of his property which obstructs the easement or is incompatible with its existence, or which renders the exercise by the owner of the easement of his rights unreasonable, difficult, or bur-

densome; and the same rule applies to one who claims under the owner of the servient tenement. In determining if the use made by the owner of the servient tenement is consistent with the rights of the owner of the easement, *the court should consider the nature of the easement and the limitation placed on it by acts of the parties as well as the interpretation of the agreement made in the easement.*"

It is clear that the limitation placed on the easement by the acts of both the plaintiff as the owner of the dominant estate and the owners of the servient estate is that the use of the land under the transmission line for residential purposes is not incompatible or inconsistent with the plaintiff's enjoyment of its easement and that such uses are consistent with the easement and not precluded by it.

The Court concludes that upon the agreed facts and the applicable law that the plaintiff is not entitled to the relief sought and that the defendant is entitled to judgment of dismissal of the complaint.

It is therefore ordered that judgment of dismissal of the complaint be entered forthwith.