UNITED STATES of America,
Plaintiff-Appellant,

v.

Harry S. CROSS, Jr., Defendant-
Appellee.

No. 72–1492.

United States Court of Appeals,
Tenth Circuit.

Argued March 26, 1973.

Decided April 27, 1973.

Edmund B. Clark, Chief, Appellate Section, Land and Natural Resources Division, Dept. of Justice, Washington, D. C. (Kent Frizzell, Asst. Atty. Gen., Jacques B. Gelin and Dennis M. O'Connell, Attys., Dept. of Justice, Washington, D. C.; James L. Treece, U. S. Atty., Charles W. Johnson, Asst. U. S. Atty., Denver, Colo., on the brief), for plaintiff-appellant.

Willis K. Kulp, Greeley, Colo., for defendant-appellee.

Before PICKETT, SETH and McWILLIAMS, Circuit Judges.

PICKETT, Circuit Judge.

The United States brought this action seeking an injunction to prevent Harry S. Cross from constructing a building on its easement over lands upon which the Bureau of Reclamation had constructed and was operating a high voltage electric transmission line. Cross admitted the proposed construction, but denied that it was an encroachment on the rights granted by the easement. The

trial court held, on stipulated facts, that the easement couched in general terms had been, over the years, construed by the parties as permitting such construction and denied the relief sought, 339 F.Supp. 221.

Cross' predecessor in interest, in 1938, granted to the United States "a right of way and easement, together with all rights and privileges incident to the use and enjoyment thereof to construct, maintain and operate a 115 Kv. transmission line over and across" the described lands. At the time of the grant the easement was located over open agricultural lands. Subsequent to the erection of the transmission line the area in which the Cross lots are located was subdivided and became a part of the city of Greeley, Colorado. Since 1950 eight dwelling houses and a gasoline service station have been constructed on lots within the right of way and under the transmission lines. The last of these structures was completed in March 1966. Most of these buildings extend under two or three of the conductor wires. The Cross house extends under only one.

The parties agreed that the presence of the Cross house will make inspection of the lines more difficult, make detours of equipment necessary, increase line maintenance cost and increase the delay and expense in the event of a power outage, and, that under certain conditions electric currents could be induced to flow in various metal parts of any structure located beneath a line, thereby causing a hazard to the occupants. Cross made it clear, however, through photographic exhibits and a drawing, that his proposed construction would interfere no more, and possibly less, with the government's maintenance of the line than any of the existing structures, none of which has ever been challenged by the government as an encroachment on its easement. Moreover, in 1961, the government specifically stated in writing that it had no objection to the construction of the gasoline station.

In dismissing the action, the trial court stated:

The uses of the land under the transmission line do not prevent the plaintiff from operating and maintaining the line, but such uses have increased the difficulty and cost of maintenance over what it would be if no such uses were made of the land under the line. Yet, at no time since these uses were initiated in the year 1950 until January 1971, did the plaintiff object to such uses as an unlawful interference with its easement rights, or that such uses were incompatible or inconsistent with or constituted an unreasonable interference with the plaintiffs rights under the easement.

On the contrary, when one Rothman, who built a filling station under the transmission line in 1961, (Building L Exhibit 16) wrote plaintiff and asked whether it had objection to the construction of the filling station in that location, was informed by the plaintiff it had none.

These facts, together with the fact that the easement grant contains no provision prohibiting the uses made by the owners of the servient estate, leads to the conclusion that both the owners of the servient estate and the plaintiff as the owner of the dominate [sic] estate construed plaintiff's easement as not precluding the use of the servient estate for residential purposes.

■■ The issue presented is not one of estoppel or waiver of governmental rights but is whether the proposed construction is an encroachment upon the rights granted by the easement. It is the general law of contracts that in construing ambiguous and indefinite contracts the courts will look to the construction the parties have given to the instrument by their conduct before a controversy arises. The Colorado courts recognize this rule. In Greeley and Loveland Irrigation Company v. McCloughan, 140 Colo. 173, 342 P.2d 1045 (1959), the court says: "Colorado has long recognized the rule that in constru-

ing a contract the courts will follow the construction placed upon it by the parties themselves. [Citing cases.]" *See also* Chevron Oil Co. v. Barlow, 406 F.2d 687 (10th Cir. 1969); 17A C.J.S. Contracts § 325 (1963). The same rule is applicable to easements. With reference to easements, 2 Thompson on Real Property § 385 (Repl.1961) states:

> The rule is well settled that where a grant of an easement is general as to the extent of the burden to be imposed on the servient tenement, an exercise of the right, with the acquiescence and consent of both parties, in a particular course or manner, fixes the right and limits it to the particular course or manner in which it has been enjoyed. The grant of a way when there is any uncertainty or ambiguity in it may be interpreted by reference . . . especially to the practical interpretation put upon the grant by the acts of the parties in the use of the easement immediately following the grant. When the grant is ambiguous the construction given by the parties themselves, as proved by the manner in which they exercised their rights under the conveyance, is legal evidence.

Gayton v. Lebedina, 158 Cal.App.2d 252, 322 P.2d 285 (1958); Isenberg v. Woitchek, 144 Colo. 394, 356 P.2d 904 (1960); Marden v. Mallard Decoy Club, 278 N.E.2d 743 (Mass.1972); Doody v. Spurr, 315 Mass. 129, 51 N.E.2d 981 (1943); York v. Cooper, 60 Wash.2d 283, 373 P.2d 493 (1962); 25 Am.Jur. 2d, Easements and Licenses § 23 (1966); Annot., 3 A.L.R.3d 1256 (1965); 28 C.J.S. Easements § 91A (1941).

The general terms of the easement granted only a right to erect, maintain and operate an electric transmission line over the property. Subject to this grant the owner was free to use the land as he saw fit. Over the years no objection was made to residential use of the right of way. Cross' construction interferes no more with the government's maintenance of the line than any of the existing structures. We agree with the trial court that the parties by their conduct have construed the easement to permit residential use of the servient tenement.

In an extensive argument in its brief, the government contends that it cannot be deprived of any property right because of acts of government administrative officials or on any estoppel or laches theory. These contentions have no application to the issues here. The government has not been deprived of any property right. It has no more or less than it had at the time of the original grant in 1938. The holding of the court below is that the original grant as construed by the parties permits residential use of the servient estate as proposed by Cross.

Affirmed.